Nos. 2-09-0618 & 2-09-0964 cons.        Filed:  8-19-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BOARD OF MANAGERS OF HIDDEN LAKE TOWNHOME OWNERS ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--MR--50 |
| | ) | |
| GREEN TRAILS IMPROVEMENT ASSOCIATION, | ) ) | |
| | ) | |
| Defendant-Appellee and Third-Party Plaintiff-Appellant | ) ) | |
| | ) | Honorable |
| (The Ryland Group, Inc., Third-Party Defendant-Appellee). | ) ) | Kenneth J. Popejoy, Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Board of Managers of Hidden Lake Townhome Owners Association (Hidden Lake), sued defendant, Green Trails Improvement Association (Green Trails), seeking a declaration that a license agreement (agreement) entered into between the Ryland Group, Inc. (Ryland), as the developer of Hidden Lake, and Green Trails did not obligate the property owners of Hidden Lake to pay yearly assessments to Green Trails for the use of Green Trails' paths.  Hidden Lake also sued Green Trails for unjust enrichment, claiming that Green Trails was illegally retaining the assessments paid.  Upon being sued, Green Trails filed a third-party complaint against Ryland, alleging that Ryland breached the agreement when it failed to amend Hidden Lake's declaration of covenants,

conditions, and restrictions (Hidden Lake Declaration) to reflect the agreement's terms. Following a bench trial, the court entered judgment against Hidden Lake and in favor of Green Trails on Hidden Lake's complaint. On the third-party complaint, the trial court held that Ryland breached the agreement but that Green Trails suffered no damages. Hidden Lake and Green Trails filed timely appeals. For the reasons that follow, we reverse the judgment in favor of Green Trails on count I of the complaint and direct the trial court to enter judgment in favor of Hidden Lake on count I upon remand, and we affirm the judgment in favor of Green Trails on count II of the complaint. We affirm the judgment in favor of Green Trails and against Ryland on the third-party complaint, but reverse the trial court's determination that Green Trails suffered no damages and remand for further proceedings relating to Green Trails' damages claim.

BACKGROUND

The record shows that Green Trails is a master plan development in Lisle, Illinois. It consists of approximately 744 acres that contain residential neighborhoods comprised of single-family and multifamily units. The development is distinguished by its ponds, woods, open spaces, and 25 miles of trails, or more properly concrete or asphalt paths, for hiking, jogging, biking, and roller skating or blading. Green Trails' expert described the development as a "primary residential community within the suburban area."

According to Hidden Lake's complaint, in December 1996, Ryland executed the Hidden Lake Declaration, in which it stated, inter alia, its intention to create on its property a community consisting of townhomes. Testimony showed that, as of the time of trial, Hidden Lake encompassed 19 buildings with 88 units. Hidden Lake is not part of Green Trails, although one has to go through Green Trails to get to Hidden Lake.

In marketing its Hidden Lake townhomes (which had yet to be built), Ryland inaccurately advertised Hidden Lake as a new Green Trails development. Green Trails objected to Ryland's marketing techniques, whereupon Ryland suggested to Green Trails that they formalize a relationship between them. On June 11, 1997, Ryland and Green Trails entered into the agreement.

The Agreement

Under the agreement, Ryland was the licensee and Green Trails was the licensor. The agreement recited that Ryland "believes its marketing efforts will be enhanced and safety issues will be resolved" if future lot owners in Hidden Lake were granted access to and use of certain real estate owned by Green Trails. Green Trails, in consideration of "the mutual covenants, conditions and agreements of the parties hereinafter provided," granted Ryland an "irrevocable" license to continue for a period of 50 years, renewable for additional periods at Green Trails' option. The license granted Ryland and its "successors or assigns" the right to access and use the paths, parks, recreational equipment, and "devices" located in Green Trails to which members of Green Trails had access. The agreement further provided that Ryland "agrees to include in its declaration of protective covenants a provision requiring the [Hidden Lake] Lot Owners to become Affiliate Members *** of [Green Trails] and shall be subject to all terms and conditions of [Green Trails'] Declaration except as otherwise provided herein." The agreement defined an "affiliate member" as any lot owner in Hidden Lake and "its successors and assigns (e.g., subsequent purchasers)." An affiliate member had the rights and obligations of a member of Green Trails, with the exception that an affiliate member had no vote or right to hold any office in the Green Trails Improvement Association, although an affiliate member could serve on committees appointed by Green Trails' board of

directors. For the purpose of marketing the sale of lots in Hidden Lake, Ryland was given the right to disclose "the affiliation" with Green Trails in its sales or promotional materials.

The evidence showed that purchasers in Hidden Lake received welcoming letters from Green Trails and were billed annual assessments by Green Trails, which were less than the amounts paid by Green Trails' residents. Hidden Lake owners paid these assessments until 2005.

The Hidden Lake Declaration of Covenants, Conditions, and Restrictions

Ryland created and recorded the Hidden Lake Declaration, which provided that the Hidden Lake property "shall be held, occupied, sold and conveyed subject to the covenants, conditions, restrictions, reservations, easements, charges and liens created herein." According to the declaration, such conditions, restrictions, reservations, easements, charges, and liens were considered covenants running with the property and "shall be binding on all parties acquiring any interest in and to the aforesaid Property or any part thereof, and shall inure to the benefit of each Owner thereof." Section 15.01 of article XV of the declaration provided as follows:

"In addition to any rights or powers reserved to the Declarant and/or Developer under the provisions of this Declaration or the By-Laws, the Declarant and/or Developer shall have the rights and powers set forth in this Article. Anything in this Declaration or the By-Laws to the contrary notwithstanding, the provisions set forth in this Article shall govern. If not sooner terminated as provided in this Article, the provisions of this Article shall terminate and be of no further force and effect from and after such time as both the Declarant and Developer no longer are vested with or control title to any part of the Development Area. Notwithstanding any other provision contained in this Declaration to the contrary, until such time the Declarant shall have the right to amend this Declaration without complying with

Article XVII, Section 17.05 of the Declaration. This right shall cease upon the election of the initial Board of Directors by the Members."

It was undisputed that Ryland did not amend this declaration in accordance with its undertaking to do so in the agreement. It was also undisputed that Green Trails recorded the agreement against all of the lots in Hidden Lake.

### The Litigation

In 2005, William Dramel, a Hidden Lake resident, approached Green Trails with a request that Green Trails seal coat that portion of a lake path that was on Hidden Lake property. When Green Trails refused, the Hidden Lake board reviewed Hidden Lake's legal status vis-a-vis Green Trails and concluded that Hidden Lake owners were not bound by the agreement entered into between Ryland and Green Trails. On January 17, 2006, Hidden Lake filed suit against Green Trails. Count I sought a declaratory judgment and alleged that Ryland never recorded any amendments to the Hidden Lake Declaration and that, consequently, the owners in Hidden Lake were not bound by the agreement between Ryland and Green Trails. Count II alleged that Green Trails' retention of the assessments that Hidden Lake owners paid through the years amounted to an unjust enrichment. On May 19, 2006, Green Trails filed a third-party complaint against Ryland for breach of contract. The trial court granted Green Trails' motion for summary judgment against Ryland on the issue of Ryland's breach of the agreement, denied the remainder of all parties' motions for summary judgment, and heard the case without a jury.

The evidence at trial showed that the paths in Green Trails were open to and used by the general public, not just by Green Trails' and Hidden Lake's members. Green Trails presented expert testimony that Hidden Lake owners economically benefitted from their affiliation with Green Trails

because the perception that Green Trails was a prestigious community resulted in an increased market value of Hidden Lake properties. The trial court held that the agreement was binding on Hidden Lake owners and found in favor of Green Trails on Hidden Lake's complaint. The trial court found that Ryland breached the agreement when it failed to amend the Hidden Lake Declaration, but it ruled that Green Trails suffered no damages. Timely notices of appeal were filed.

DISCUSSION

Hidden Lake's Appeal

Hidden Lake's first contention is that the agreement was personal to Ryland and that the purported covenant to grant Hidden Lake residents rights to Green Trails in exchange for payment of assessments to Green Trails did not run with Hidden Lake's owners' land. Green Trails maintains that the agreement was a covenant running with the land that created an easement appurtenant. An easement provides a right or a privilege in the use of another's property. Matanky Realty Group, Inc. v. Katris, 367 Ill. App. 3d 839, 842 (2006). An easement qualifies as appurtenant when the user of the right enjoys a dominant estate over the used land, which is considered the servient estate. Matanky, 367 Ill. App. 3d at 842. Construction of a contract is a question of law, subject to de novo review. Regency Commercial Associates, LLC v. Lopax, Inc., 373 Ill. App. 3d 270, 275 (2007).

A license is an authority to do some act on the land of another without passing an estate in the land and is personal to the licensee. Leonardi v. Chicago Transit Authority, 341 Ill. App. 3d 1038, 1043 (2003). Even though the agreement purported to grant Ryland a license, which would be personal to Ryland, Green Trails argues that the agreement must be interpreted as a covenant running with the land that bound the Hidden Lake owners. This is so, asserts Green Trails, because the agreement meets the criteria for a covenant running with the land. Specifically, Green Trails

argues that it and Ryland intended the covenant to run with the land, the covenant touched and concerned the land, and there was a privity of estate between Green Trails and Ryland. See In re Application of the County Treasurer & ex officio County Collector, 373 Ill. App. 3d 679, 689 (2007).

In construing the language of a contract, a court's principal objective is to give effect to the intent of the parties when they entered into the agreement. Regency, 373 Ill. App. 3d at 275. The agreement should be interpreted as a whole, giving meaning and effect to every provision when possible, and a court will not interpret the agreement so as to nullify provisions or render them meaningless. Regency, 373 Ill. App. 3d at 275. If the terms of the agreement are unambiguous, the parties' intent is ascertained solely from the words of the contract itself. Regency, 373 Ill. App. 3d at 275. Whether language is ambiguous and requires additional evidence for interpretation is a question of law. Regency, 373 Ill. App. 3d at 275. A court's construction of a contract is reviewed de novo. Regency, 373 Ill. App. 3d at 275.

We conclude that the agreement is unambiguous and that it created a license rather than a covenant running with the land. Paragraph 7 of the agreement provided as follows:

> "7. DECLARATION OF PROTECTIVE COVENANTS: Licensee agrees to include in its declaration of protective covenants a provision requiring the Lot Owners to become Affiliate Members as [sic] (as hereinafter defined) of Licensor and shall be subject to all terms and conditions of the Licensor's Declaration except as otherwise provided herein."

Because the Hidden Lake Declaration was already recorded, this provision expressed the parties' intent for Ryland to amend it in order for the Hidden Lake owners to be bound by the Green Trails declaration as affiliate members. An amendment as contemplated by the agreement would be necessary because, as the developer of Hidden Lake, Ryland provided in the Hidden Lake

Declaration that the lots were to be sold subject to the "covenants, conditions, restrictions, reservations, easements, charges and liens" created in the Hidden Lake Declaration. Without the amendment to the Hidden Lake Declaration contemplated by the agreement, the Hidden Lake lots could not be subject to the terms of the agreement.

That the parties did not intend the agreement itself to create a covenant running with the land is further bolstered by paragraph 2 of the agreement:

> "2. <u>Term And Purpose of License</u>: Licensor hereby grants an irrevocable license to Licensee over and across the Real Estate for the purpose of granting Licensee access to and use of the Real Estate for recreational purposes. The License hereby granted over and across the Real Estate shall continue for a period of fifty (50) years from the date of this Agreement, unless Licensee shall default under any term or condition hereinafter set forth and said default shall continue uncured for a period of thirty (30) days after notice thereof from Licensor, or unless any of the land described in 'Exhibit A' shall at any time be used for purposes other than residential, at which time the License shall terminate. The License shall be renewable for additional periods of time at the option of Licensor."

What Hidden Lake refers to as the "access covenant" was to be in effect for 50 years and thereafter only at Green Trails' option. The trial court found that the agreement was "irrevocable during its 50-year term."[1] In contrast, a covenant that runs with the land binds successor grantees indefinitely. Black's Law Dictionary 393 (8th ed. 2004). "It is well-settled that covenants running with the land inhere in the land and bind subsequent purchasers." <u>SI Securities v. Bank of Edwardsville</u>, 362 Ill.

---

[1] This was the trial court's finding No. 3. Finding No. 22 was "The subject License Agreement is irrevocable."

App. 3d 925, 931 (2005). The trial court also found that Ryland's successor in interest to the agreement was the Hidden Lake Townhome Owners Association. Consequently, the plain meaning of the agreement was that another step was necessary--Ryland's amendment of the Hidden Lake Declaration--before Hidden Lake owners would be bound. It is undisputed that Ryland never took that necessary step.

Green Trails recorded the agreement against every lot in Hidden Lake, which Green Trails argues binds those lot owners. We disagree because recording the agreement put the Hidden Lake owners on notice only that Ryland had an obligation to amend the Hidden Lake Declaration to incorporate the agreement. A developer's properly recorded declaration is valid and binding on the lots to which it pertains. Davis v. Huguenor, 408 Ill. 468, 473 (1951). Green Trails' declaration did not pertain to Hidden Lake. Without the amendment to the Hidden Lake Declaration, Hidden Lake owners were not bound by the terms and conditions of Green Trails' declaration as provided for in the agreement. Moreover, only the developer, Ryland, as the grantor, could bind subsequent owners in Hidden Lake with a covenant running with the land. See Streams Sports Club, Ltd. v. Richmond, 99 Ill. 2d 182, 188 (1983).

Section 11.04 of the Hidden Lake Declaration provided that all of the easements, rights, covenants, agreements, reservations, restrictions, and conditions "contained in this Declaration" shall run with the land. The trial court found that this section provided additional notice to the Hidden Lake owners. However, that notice was of covenants contained in the Hidden Lake Declaration. The issue is, could Green Trails, by recording the agreement against all of the Hidden Lake lots, in effect exercise Ryland's right to amend the Hidden Lake Declaration?

In section 15.01 of the Hidden Lake Declaration, Ryland reserved the power to amend the Declaration until the election of the initial board of directors by the members of the Hidden Lake Townhome Owners Association. When Green Trails recorded the agreement, Ryland still possessed the power to amend. Generally, a developer's reserved power to revoke or amend the restrictions and conditions expressed in a recorded declaration is construed as a personal covenant and can be exercised only by the one who imposes it. Fox Lake Hills Property Owners Ass'n v. Fox Lake Hills, Inc., 120 Ill. App. 2d 139, 145 (1970). Consequently, the power to amend the Hidden Lake Declaration to carry out the provisions of the agreement was personal to Ryland and could not be exercised by Green Trails.

Because we determine that the parties did not intend for the agreement itself to create a covenant running with the land, we do not reach a discussion of whether it touched and concerned the land or whether the Hidden Lake owners were in privity of estate with Ryland.

Accordingly, for the foregoing reasons, the trial court's judgment in favor of Green Trails on count I of Hidden Lake's complaint is reversed.

With respect to count II, unjust enrichment, the trial court found that Green Trails did not unjustly retain a benefit to Hidden Lake's detriment:

"The affiliate membership within Green Trails conferred a tangible and economic benefit upon each Hidden Lake lot owner that a non affiliate member would not obtain. While Green Trails has an 'open door' policy on actual use there is a valid restriction to the right to refer to 'membership' in Green Trails within real estate marketing to only members or affiliate members. Current lot owners of Hidden Lake use their affiliate membership status in real estate marketing material and it increases the value of their homes. Finally, the

current affiliate annual assessments in the amount of $153 per unit are less than the actual benefit to each lot owner in terms of increased market value and enjoyment of the marketability of those amenities."

Hidden Lake contends that Green Trails was unjustly enriched because Green Trails and Ryland misrepresented to Hidden Lake owners that they were part of Green Trails when, in fact, Hidden Lake never received anything in return for the assessments it paid. Green Trails maintains that unjust enrichment does not apply, because the parties are bound by an express contract, the agreement between Ryland and Green Trails. If unjust enrichment does apply, Green Trails argues that the trial court's finding that Hidden Lake benefitted from its relationship with Green Trails is not against the manifest weight of the evidence.

To state a cause of action for unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention violated the fundamental principles of justice, equity, and good conscience. Galvan v. Northwestern Memorial Hospital, 382 Ill. App. 3d 259, 271 (2008). Unjust enrichment is based on an implied contract, and the theory does not apply where there is a specific contract that governs the relationship of the parties. SwedishAmerican Hospital Ass'n of Rockford v. Illinois State Medical Inter-Insurance Exchange, 395 Ill. App. 3d 80, 108 (2009). Damages in an unjust-enrichment claim are restitution measured by the defendant's gain, not the plaintiff's loss. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 257-58 (2004). A trial court's findings of fact will not be disturbed on appeal unless those findings are against the manifest weight of the evidence. Gass v. Anna Hospital Corp., 392 Ill. App. 3d 179, 183 (2009).

We first address Green Trails' contention that the argument that Green Trails and Ryland misrepresented the facts to Hidden Lake is forfeited because Hidden Lake raises it for the first time in this appeal. Issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc., 378 Ill. App. 3d 437, 453 (2007). We reject this argument. Hidden Lake adequately argued in the trial court that Green Trails billed for and accepted payment of the assessments, knowing that its declaration did not provide for Hidden Lake owners to be affiliate members of Green Trails.

We also reject Green Trails' argument that unjust enrichment does not apply because the parties were bound by an express contract, that being the agreement. We have already determined that the Hidden Lake owners were not bound by the agreement. Consequently, the theory of unjust enrichment does apply.

Hidden Lake bases its claim of misrepresentation on the welcome letter each new Hidden Lake owner received from Green Trails, advising the new Hidden Lake owner that, as an affiliate member of Green Trails, he or she was obligated to pay an annual assessment that covered maintenance and insurance for common green areas, accent areas, and the lighted pathway system throughout the entire subdivision. Hidden Lake says that this representation was false because Hidden Lake in fact was not part of Green Trails and none of the assessments benefitted Hidden Lake owners.

Hidden Lake distinguishes between the benefits to Ryland of a "corporate marketing plan" and any marketing benefit to the Hidden Lake owners from their association with Green Trails. The only reference to marketing in the agreement is found in paragraph 9. The last sentence of that paragraph provided that "For purposes of marketing the sale of lots, Licensee may disclose the

affiliation with Licensor in any sales or promotional materials."  While this sentence pertained to Ryland, nothing in the agreement prevented Hidden Lake owners from using their relationship with Green Trails as a selling point.

Green Trails' expert at trial testified that Hidden Lake's affiliation with Green Trails increased the value of Hidden Lake property.  In this appeal, Hidden Lake challenges a number of the trial court's factual findings, but it does not challenge the finding that the annual assessment in the amount of $153 per unit was less than the actual benefit to each Hidden Lake lot owner.  While Hidden Lake disputes the weight to be given Green Trails' expert's testimony, Hidden Lake offered no contrary evidence, and the weight to be given to expert testimony is for the trier of fact.  Dienstag v. Margolies, 396 Ill. App. 3d 25, 36 (2009).  Consequently, we cannot say that the trial court erred in finding in favor of Green Trails on the unjust-enrichment claim.  For this reason, we will not address Green Trails' argument that the unjust-enrichment count was barred by laches.  Accordingly, the trial court's judgment in favor of Green Trails on count II of the Hidden Lake complaint is affirmed.

Green Trails' Appeal

Green Trails appeals the trial court's judgment that it suffered no damages as a result of Ryland's breach of the agreement.  The first reason given by the trial court for its finding that Green Trails suffered no damages was that Ryland's breach of the agreement was cured by the recording of the agreement.  In other words, the trial court found that the breach was not material.  As we discussed above, by recording the agreement Green Trails attempted to exercise Ryland's reserved power to amend the Hidden Lake Declaration, which it could not do.  The trial court's second reason for finding that Green Trails suffered no damages was that Ryland was not contractually obligated to indemnify Green Trails.  At issue in this dispute is paragraph 12(a) of the agreement:

-13-

"Licensee, its successors and assigns and subsequent Lot Owners, shall pay all the Licensor's costs, charges and expenses, including the fees of counsel, agents and others retained by Licensor, incurred by enforcing the Licensee's obligations hereunder or incurred by the Licensor in any litigation, negotiation or transaction in which the Licensee causes the Licensor, without the Licensor's fault, to become involved or concerned. This indemnification provision shall not apply to any litigation, negotiation or transaction which may arise in connection with the execution of this License or the authority of the Licensor or Licensee to execute this License. Furthermore, the Licensor's rights to seek remedies for the nonpayment of assessments shall be limited solely to the defaulting Lot Owner and the Licensee shall neither be responsible for the payment of such assessments nor be required to indemnify the Licensor for the costs incurred by the Licensor in connection with the enforcement of the payment of such assessments." (Emphasis added.)

The trial court held that the central issue of the litigation was whether Hidden Lake owners must pay assessments to Green Trails, thus negating Ryland's duty to indemnify Green Trails for costs and fees and other consequential damages. The construction of a contract is an issue of law, which we review de novo. Regency, 373 Ill. App. 3d at 275.

We agree with Green Trails. By its own terms, paragraph 12(a) is an indemnity agreement. In an indemnity agreement, the indemnitor agrees to protect the indemnitee from claims asserted against the indemnitee by third persons. Magnus v. Lutheran General Health Care System, 235 Ill. App. 3d 173, 185 (1992). Here, the first sentence of paragraph 12(a) provides that Ryland shall pay all of Green Trails' costs, charges, and expenses, including attorney fees, in any litigation in which Ryland, without Green Trails' fault, causes Green Trails to become involved. Ryland's fault in

failing to amend the Hidden Lake Declaration caused Green Trails to become involved as a defendant in the instant litigation. Therefore, unless Ryland falls within some exception to the indemnification clause, Ryland is required to indemnify Green Trails for its losses, including attorney fees.

The second sentence of paragraph 12(a) states that the indemnification provision does not apply to litigation arising from the execution of the agreement or the authority of the parties to execute the agreement. This exception is inapplicable because the instant litigation did not arise from the execution of, or authority to execute, the agreement. Ryland contends that it falls within the exception created by the third sentence of paragraph 12(a), excepting it from indemnifying Green Trails for costs incurred in connection with the enforcement of payment of assessments by Hidden Lake owners, since this lawsuit is about Hidden Lake's desire not to pay the assessments. Ryland's construction of this exception ignores the language in the third sentence that provides that Ryland would not be liable to indemnify Green Trails in connection with Green Trails' enforcement of payment of assessments that were in default. In this case, Green Trails was the defendant in a declaratory judgment suit that sought to void the agreement. Green Trails did not sue any defaulting Hidden Lake owner for back assessments. Consequently, the clause relied on by Ryland to negate its indemnification obligation does not apply.

Ryland maintains that Green Trails would have had to defend a lawsuit against Hidden Lake even if Ryland had not breached the agreement, because this lawsuit resulted from Hidden Lake owners' "frustration and perception" that they "were not getting enough value for their assessment payments." This argument is speculative and misses the point. Ryland's breach is what occasioned the lawsuit regardless of Hidden Lake's motive. Accordingly, we reverse the judgment of the trial

court on the third-party complaint and remand for further proceedings on the issue of Green Trails' damages based upon Ryland's breach of contract and for indemnification of Green Trails' attorney fees and costs incurred in defending the instant litigation.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment in favor of Green Trails on count I of Hidden Lake's complaint and, upon remand, direct the trial court to enter judgment in favor of Hidden Lake on count I. We affirm the trial court's judgment in favor of Green Trails on count II of Hidden Lake's complaint. On Green Trails' third-party complaint against Ryland, we affirm the trial court's judgment in favor of Green Trails and remand.

Affirmed in part and reversed in part; cause  remanded with directions.

McLAREN and BURKE, JJ., concur.