NEVA A. SULSER, Indiv. and as Special Adm'r of the Estate of George R. Sulser, Deceased, Appellee, v. COUNTRY MUTUAL INSURANCE COMPANY, Appellant.

*Opinion filed February 20, 1992.*

FREEMAN, J., took no part.

Michael F. Dahlen, of Feirich, Schoen, Mager & Green, of Carbondale, for appellant.

Craig R. Reeves and William L. Broom III, of Barrett, Twomey, Morris, Broom & Hughes, of Carbondale, for appellee.

Michael J. Teather and George M. Elsener, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Neva A. Sulser, filed suit in the circuit court of Jackson County to recover underinsured motorist benefits from defendant, Country Mutual Insurance Company (Country Mutual). Country Mutual filed a motion for judgment on the pleadings, contending that plaintiff's policy benefits were offset by the workers' compensation benefits she had received. The court granted defendant's motion, and plaintiff appealed. The appellate court reversed and remanded the cause for further proceedings. (208 Ill. App. 3d 15.) We then allowed defendant's petition for leave to appeal (134 Ill. 2d R. 315), and accepted an *amicus curiae* brief from the Illinois Trial Lawyers Association.

The sole issue for review is whether an insurer may reduce payments due to an insured under underinsured motorist coverage by the amount of workers' compensation benefits received by the insured. For the reasons below, we hold that such a reduction may be made.

Plaintiff's husband was killed in a motor vehicle accident involving an underinsured motorist. At the time of the accident, the Sulsers had an insurance policy with Country Mutual which provided for underinsured motorist benefits in the amount of $100,000. The policy specified

that any amounts received by the insured from workers' compensation would be deducted from Country Mutual's coverage. Plaintiff recovered $50,000 from the underinsured motorist and then sought payment from Country Mutual in the amount of $50,000, that is, $100,000 (the limit of underinsured motorist benefits) less $50,000 recovered from the underinsured motorist. Country Mutual claimed that any workers' compensation benefits received by plaintiff should also be deducted from the $100,000. Because the parties had stipulated that the workers' compensation payments received by plaintiff exceeded $50,000, defendant contended that it thus had no further obligation to plaintiff under the policy.

The trial court agreed with Country Mutual, and granted its motion for judgment on the pleadings. Plaintiff appealed, and the appellate court, while recognizing that an insurance company may deduct workers' compensation benefits from *uninsured* motorist coverage, concluded that the Illinois Insurance Code does not authorize such a setoff of workers' compensation benefits against *underinsured* motorist coverage. Accordingly, the appellate court reversed.

Section 143a—2(3) of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3)) defines an underinsured motor vehicle as one which has resulted in bodily injury or death to the insured, and for which "the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security" maintained by the person responsible for the vehicle is less than the limits of underinsured coverage provided the insured under his policy at the time of the accident. Section 143a—2(3) then addresses the insurer's liability:

> "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other

security maintained on the underinsured motor vehicle." Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).

The above language is dissimilar to that used in section 143a(4) of the Code relating to *uninsured* motorist coverage. Section 143a(4) provides in relevant part:

> "In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the property damage, bodily injury or death for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer." (Ill. Rev. Stat. 1987, ch. 73, par. 755a(4).)

This court has interpreted section 143a(4) to allow the insurer to reduce its liability coverage by the amount of workers' compensation payments made to the insured. *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507; *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1.

The *Ullman* court rejected arguments that such a deduction violates public policy. The basis of the court's reasoning was that an employee who has received workers' compensation must reimburse the employer from any recovery the employee received from a third party responsible for the employee's injuries. (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).) The employee may retain only that portion of a recovery from the tortfeasor which exceeds the total workers' compensation benefits received. Thus, because the employee would not receive the workers' compensation anyway, allowing the insurer to deduct workers' compensation payments from uninsured motorist coverage places the insured in the same position he would occupy if the tortfeasor had been minimally insured. The court noted that, without the deduction for workers' compensa-

tion, the extent of an injured employee's recovery "would hinge on the fortuitous circumstance that the tortfeasor was uninsured and was not otherwise financially responsible." (*Ullman*, 48 Ill. 2d at 8.) The court concluded that an insurance policy limitation which precludes such a result is not offensive to public policy.

The fact that the uninsured motorist statute was re-enacted after the decision in *Ullman* indicates that the court's construction accurately reflects the public policy of the State. " '[T]he legislature is presumed to know the construction the statute has been given and, by re-enactment, is assumed to have intended for the new statute to have the same effect.' " (*Stryker*, 74 Ill. 2d at 513, quoting *City of Champaign v. City of Champaign Township* (1959), 16 Ill. 2d 58, 64.) Thus, recognizing that workers' compensation payments may be deducted from benefits received under an uninsured motorist policy, we turn to the question of whether such payments may also offset benefits received under an *underinsured* motorist policy.

Plaintiff argues that the *Stryker* and *Ullman* courts' construction of the uninsured motorist provision (section 143a(4)) is inapplicable to the underinsured motorist provision (section 143a—2(3)) because the language of the two provisions is different. (Ill. Rev. Stat. 1987, ch. 73, pars. 755a(4), 755a—2(3).) Defendant responds that neither provision specifically allows or prohibits a deduction for workers' compensation benefits, and that the purpose of both provisions is the same.

Section 143a(4) states that the insurer making payment under an uninsured motorist policy shall be entitled to the proceeds of any settlement or judgment recovered against the tortfeasor. Section 143a—2(3) states that the insurer making payment under an underinsured motorist policy shall be liable up to the limits of the coverage, less amounts actually recovered through insurance carried on the underinsured vehicle. The language of each provision

is different because each provision addresses different circumstances. It was necessary in section 143a—2(3) to refer to deductions for payments made under the underinsured motorist's policy, because the provision specifically concerns underinsured, not uninsured, motorist coverage. That section 143—2(3) lists only deductions for "applicable bodily injury insurance policies, bonds or other security" does not lead us to the conclusion that the list is exhaustive. *Expressio unius est exclusio alterius* is a rule of statutory construction, not a rule of law, and may be overcome by a strong indication of legislative intent. 2A N. Singer, Sutherland on Statutory Construction §47.25 (Sands 4th ed. 1984).

The cardinal rule of statutory construction is to determine and give effect to the legislature's intent. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341.) Thus, we examine the purpose for which section 143a—2(3) was enacted. The *Ullman* court determined that the intent of the legislature in providing uninsured motorist coverage was to place the insured in substantially the same position he would occupy if the tortfeasor were minimally insured. (*Ullman*, 48 Ill. 2d at 5.) This court has long held that sections of the same statute should be considered to be *in pari materia*, and that each section should be construed with every other part or section so as to produce a harmonious whole. (*People v. Harris* (1985), 105 Ill. 2d 290, 300; *Mann v. Board of Education of Non-High School District Number 216* (1950), 406 Ill. 224, 230.) Thus we conclude that the legislature enacted its provision for underinsured motorist coverage with the same underlying purpose for which it enacted section 143a(4), *i.e.,* to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.

In construing a statute, it is instructive to consider relevant statements by legislators concerning the nature and effect of the proposed law. (2A N. Singer, Sutherland on

Statutory Construction §48.04 (Sands 4th ed. 1984).) On June 20, 1980, during a House debate on the bill that included section 143a—2(3), Representative Telcser, a sponsor of the bill in the House, spoke of the drafters' intent in providing for underinsured motorist coverage:

> "The Amendment deals with technical problems that came up regarding an underinsured motorist. As an example: If a loss occurs, the motorist is underinsured, we wanted to be sure that the language set forth that the difference between the claim and the underinsured would be taken care of by your own insurance policy to fill the gap between the claim and the amount available from the underinsured and that there would not be any excessive claim that could be made." (81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45.)

A provision designed to offer insurance to "fill the gap" between the claim and the tortfeasor's insurance was obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy.

Uninsured and underinsured motorist policies provide virtually the same coverage to the insured. Under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties. Section 143a(4), governing uninsured motorist coverage, provides that the insurance company is entitled to deduct the proceeds of any settlement or judgment against the tortfeasor from the payment it makes to the insured. For example, if the policyholder received $100,000 in a settlement with the uninsured tortfeasor, the insurance company would have no obligation to make payment to the insured policyholder. Similarly, if the insured policyholder received workers' compensation benefits of $100,000, the

insurance company's obligation under the policy would be reduced to zero.

As plaintiff points out, the language of section 143a—2(3), governing the insurer's liability under an underinsured motorist policy, does not refer to deductions for settlement or judgment proceeds. Rather, it states that the insurer's liability shall be reduced by the amounts actually recovered under the insurance policies, bonds, or other security maintained on the underinsured motor vehicle. Thus, if the insured recovered $50,000 through the tortfeasor's insurance policy, he or she would be entitled to a payment of $50,000 under the $100,000 underinsured motorist policy. Any benefit due under terms of the policy is reduced dollar for dollar by the amount recovered from the tortfeasor, and might conceivably range from 1% to 99% of the policy coverage if no deductions were made other than those specifically listed in section 143a—2(3). In comparison, the insurer's liability under an uninsured motorist policy might range from 0% to 100% depending upon amounts realized by the insured from the tortfeasor and workers' compensation. Interpreting the underinsured motorist provision, like the uninsured motorist provision, to authorize deductions for workers' compensation payments would not affect the amount of risk against which the insured wishes to protect himself. When the insured opts for $100,000 in coverage against either uninsured or underinsured motorist risks, he is assured of receiving no more than that amount.

The court must assume that, in enacting a statute, the legislature did not intend an absurd result. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, citing *People v. Steppan* (1985), 105 Ill. 2d 310, 316.) In enacting section 143a—2(3) the legislature avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist. By the same token,

we believe that the legislature did not intend to provide that an insured would receive *greater* benefits under an underinsured than under an uninsured motorist policy. In enacting both section 143a(4) and section 143a—2(3), the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder. Since deducting workers' compensation payments from coverage under his underinsured motorist policy would still fully compensate the policyholder for his injury, we see no reason to interpret section 143a—2(3) as intending a different result than section 143a(4). Reading the two provisions together, noting that neither provision prohibits deductions for workers' compensation benefits, and construing the intent of the legislature to be the same in enacting each provision, we hold that workers' compensation benefits may offset payments made by the insurer under underinsured motorist policies.

Finally, *amicus curiae* Illinois Trial Lawyers Association argues that plaintiff should receive the compensation paid for by her underinsured motorist premiums. We note at the outset that an insurance policy is a contract between the company and the policyholder, the benefits of which are determined by the terms of the contract unless the terms are contrary to public policy. (*Stryker*, 74 Ill. 2d at 513.) The legislature intended for the insurer to state clearly in the policy what coverage was offered. On June 27, 1980, during a Senate discussion concerning whether uninsured and underinsured motorist benefits could be stacked, Senator Berman explained:

> "[W]hat we're saying is that it's going to be up to the insured upon being advised as to what is available to him to decide what he wants to buy and what he wants to pay for. The language further says that the ... company ... is not prohibited from spelling out, which we hope they will do, and I'm sure that the department will require them to in

the policy forms, to spell out what they are offering, what is being paid for and what the coverage is." (81st Ill. Gen. Assem., Senate Proceedings, June 27, 1980, at 73.)

Plaintiff's underinsured motorist policy states clearly and unequivocally:

"Amounts payable for damages under Underinsured Motorists Coverage will be reduced by:

a. all sums paid by or on behalf of persons or organizations who may be legally responsible for the bodily injury. This includes all amounts paid under the liability coverage of this policy;

b. the present value of *all amounts payable under any workmen's compensation,* disability benefits or similar law." (Emphasis added.)

Parties to a contract may agree to any terms they choose unless their agreement is contrary to public policy. (*Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 327.) The Sulsers agreed to the terms of their contract with Country Mutual. Since we have determined that a setoff of workers' compensation benefits is not contrary to public policy, we hold that, because the Sulsers have received $50,000 from the tortfeasor's insurance coverage and $50,000 from workers' compensation, Country Mutual has no obligation to them under the underinsured motorist policy.

For the above reasons, we affirm the judgment of the circuit court and reverse the judgment of the appellate court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.