ESTATE OF KATHRYN SINN, Deceased, by Robin E. Sinn, Adm'r, *et al.*, Plaintiffs-Appellants, v. MID-CENTURY INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 5—96—0401

Opinion filed May 9, 1997.

Edward T. McCarthy and Suzanne Vogel, both of Edward T. McCarthy & Associates, of Edwardsville, for appellant.

Dale L. Bode and Leslie G. Offergeld, both of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

On July 23, 1992, three minor children, Kathryn, Michael, and Jennifer Sinn, were passengers in a motor vehicle driven by their grandmother, Patricia A. Shaftic, when a vehicle driven by Christian J. Bowman crossed the median and collided with Shaftic's vehicle. Kathryn was killed and Michael and Jennifer were seriously injured. Shaftic was also killed.

The vehicle driven by Bowman was insured by Mid-Century In-

surance Company with a liability limit of $50,000. Pursuant to this policy, each of the Sinn children was paid $10,000. The vehicle driven by Shaftic was insured by Royal Insurance Company, with underinsured motorist limits of $100,000 per person/$300,000 per accident. Pursuant to this policy, the estate of Kathryn was paid $75,000, Michael was paid $53,961.10 and Jennifer was paid $50,000. It is undisputed that the children's damages exceed the amounts paid under these two insurance policies.

Accordingly, the children's father, Robin Sinn, sought recovery for his children's damages under the underinsured motorist endorsement of a policy issued to him by Mid-Century Insurance Company (Mid-Century), with limits of $50,000 per person/$100,000 per accident. Mid-Century denied coverage for the reason that the Sinn children had already received payment in excess of the limits of the underinsured motorist coverage and were therefore not underinsured.

On May 26, 1995, Robin Sinn (Sinn) filed, in the circuit court of Madison County, a second amended complaint against Mid-Century, seeking a declaratory judgment that Mid-Century is required to extend underinsured motorist coverage to Sinn up to the policy limit, with a credit of $30,000, the amount paid by the insurer of the at-fault driver (Bowman). In its answer to the complaint, Mid-Century raised the following pertinent affirmative defenses. First, Mid-Century alleged that the children had already been paid more than the underinsured motorist policy limit and were therefore not underinsured. Second, Mid-Century alleged that the "Other Insurance" provision of the policy excluded coverage. This provision states:

"We will not provide insurance for a vehicle other than your insured car or your insured motorcycle unless the owner of that vehicle has no other insurance applicable to this part."

Third, Mid-Century alleged that coverage was excluded under the "Exclusion" provision of the policy, which states:

"This coverage does not apply to bodily injury sustained by a person *** [i]f the injured person was occupying a vehicle you do not own which is insured for this coverage under another policy."

Both parties filed motions for summary judgment in their favor.

On May 2, 1996, the trial court entered summary judgment for Mid-Century, finding that the "Exclusion" set forth above was unambiguous, that under *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995), it does not violate public policy, and that it applies to exclude coverage. Sinn appeals.

The underinsured motorist endorsement contained in Sinn's Mid-Century insurance policy provides in pertinent part as follows:

"**Limits of Liability**

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:

1. The difference between the amount paid in **damages** to the **insured person** by and for any person or organization who may be legally liable for the **bodily injury**, and the limit of UNDERinsured Motorist Coverage; or

2. The amount of **damages** established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the **bodily injury**.

\* \* \*

**Other Insurance**

1. We will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements.

2. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by the amount of any other **bodily injury** coverage available to any party held to be liable for the **accident**.

3. If any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

4. We will not provide insurance for a vehicle other than **your insured car** or **your insured motorcycle**, unless the owner of that vehicle has no other insurance applicable to this part.

5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability.

\* \* \*

**Exclusions**

\*\*\*

This coverage does not apply to **bodily injury** sustained by a person:

\* \* \*

4. If the injured person was **occupying** a vehicle you do not own which is insured for this coverage under another policy."

The trial court found that this exclusion excluded coverage because the injured children were occupying a vehicle that was not owned by the insured, Sinn, and that was insured for underinsured motorist coverage under another policy, Shaftic's policy. The trial court found that the exclusion was not ambiguous and that it did not violate public policy. We are of the opinion, and find as a matter of

law, that this exclusion does violate the public policy behind the underinsured motorist insurance statute (215 ILCS 5/143a—2(4) (West 1992)), as that public policy is expressed by our supreme court in *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992).

In *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992), our supreme court found that the underlying purpose for which the legislature enacted the underinsured motorist coverage statute was to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. The court stated that, in enacting the underinsured motorist coverage provision, the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder. *Sulser*, 147 Ill. 2d at 558. In *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 230 (1995), the supreme court further explained that the purpose of underinsured motorist coverage is to fill the gap between the amount of the tortfeasor's insurance and the amount of underinsured motorist coverage the insured opted to buy.

We think the exclusion contained in the Mid-Century policy violates this public policy because, as written, it could operate to deprive the insured of the full coverage provided in his policy should the other, nonowned vehicle have underinsured motorist coverage in a lesser amount than that provided in the insured's policy. If the other, nonowned vehicle has less underinsured motorist insurance than the insured's own policy, the insured would not be placed in the same position as if injured by a motorist with liability limits equal to his own. Under the exclusion as written, the policyholder would only be entitled to receive underinsured motorist coverage up to the limit of the other, nonowned vehicle's coverage. This result violates the public policy of the underinsured motorist insurance statute of placing the insured in the same position as if injured by a motorist who carried liability limits in an amount equal to the policyholder's own limits.

The trial court relied on *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995), in finding that the Mid-Century exclusion did not violate public policy. We find *Luechtefeld* to be distinguishable from the case at bar because *Luechtefeld* involved uninsured motorist coverage, the stated public policy of which differs from the public policy behind the underinsured motorist insurance statute.

At issue in *Luechtefeld* was whether an insurance policy may, consistently with public policy, exclude uninsured motorist coverage for vehicles owned by the insured when such vehicles have uninsured motorist coverage under another policy. The insured was injured

when struck by an uninsured motorist while operating a motorcycle he owned. The motorcycle was insured under a policy issued by Pekin Insurance Company with uninsured motorist insurance limits of $20,000 per person/$40,000 per accident. The insured received the full $20,000 from Pekin Insurance Company. He then sought recovery under the uninsured motorist provision of a policy issued by Allstate Insurance Company on other vehicles he owned. This policy provided uninsured motorist insurance with a limit of $100,000 per person/$300,000 per accident. Allstate denied coverage based on the exclusionary clause described above. The insured argued that the exclusionary clause violated public policy.

Our supreme court held that the purpose of the uninsured motorist statute is to place the insured policyholder in substantially the same position he would occupy if the uninsured driver had been *minimally* insured. *Luechtefeld*, 167 Ill. 2d at 152. This differs from the public policy behind the underinsured motorist insurance statute, which is to place the insured policyholder in the same position he would occupy if the underinsured driver had insurance in the same amount as the policyholder. *Sulser*, 147 Ill. 2d at 558. The purpose of the uninsured motorist statute is not defeated by the exclusion contained in the Allstate policy in *Luechtefeld* because the plaintiff had the minimum coverage under his Pekin policy and recovered that amount. Enforcement of the exclusion in *Luechtefeld* would never leave an injured insured without uninsured motorist coverage in the minimum amount as required by the statute. *Luechtefeld*, 167 Ill. 2d at 155. Thus, the public policy behind the uninsured motorist statute was achieved. The insured in *Luechtefeld* was in substantially the same position he would have been if the uninsured driver had been minimally insured. Because the public policies behind the uninsured motorist insurance statute and the underinsured motorist insurance statute are different, and because *Luechtefeld* involved only uninsured motorist insurance, we find that it is not applicable to the case at bar.

We recognize that, in the case at bar, the other, nonowned vehicle actually had underinsured motorist coverage in excess of that provided in Sinn's Mid-Century policy. Thus, Sinn was actually placed in a better position in terms of total recovery than he would have been had his own underinsured motorist policy been the only such insurance. Accordingly, Mid-Century argues that enforcement of the exclusion in the case at bar would not violate public policy. We find, however, that the exclusion as written does violate the public policy of this State and is therefore unenforceable even in a fact situation such as the one at bar.

We also point out that, unlike the policy in *Sulser*, which contained a setoff provision for amounts recovered under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)), the Mid-Century policy in the case at bar contains no setoff provision for amounts collected from sources other than the tortfeasor. The Mid-Century policy does limit liability to the difference between the amount collected from the tortfeasor and the limit of the Mid-Century underinsured coverage. It also provides that the amount of underinsured motorist coverage paid by Mid-Century shall be reduced by the amount of any other bodily injury coverage available to any party held liable for the accident. However, the Mid-Century policy does not contain a setoff provision for amounts collected from other applicable underinsured motorist insurance policies, such as the amount collected from Shaftic's underinsured motorist insurance. The Mid-Century policy provides only that Mid-Century must pay only its share of all collectible underinsured motorist insurance. That share is defined as "the proportion that our limits of liability bear to the total of all applicable limits." Accordingly, Mid-Century is not entitled to a complete setoff of the amount paid by Shaftic's underinsured motorist insurance, but must share in the total of the children's damages to the extent of its limits of liability. However, Mid-Century is entitled to a setoff of the $30,000 paid by the tortfeasor's insurer.

We look, then, for an alternate basis on which to affirm the summary judgment in favor of Mid-Century and find none. Mid-Century argued before the trial court that the "Other Insurance" provision, which states that Mid-Century "will not provide insurance for a vehicle other than your insured car *** unless the owner of that vehicle has no other insurance applicable to this part" (emphasis omitted), also excludes coverage because the owner of the other vehicle did have underinsured motorist insurance. However, we find as a matter of law that this "Other Insurance" provision also violates the public policy behind the underinsured motorist insurance statute for the same reason the exclusion does: in the event the underinsured motorist insurance on the other vehicle is less than the limit in the policyholder's own policy, the policyholder is not placed in the same position as if the tortfeasor had the same liability coverage as the policyholder.

For the reasons set forth above, we reverse the summary judgment in favor of defendant Mid-Century, and we remand this cause to the circuit court of Madison County for further proceedings on plaintiffs' second amended complaint, including a determination of the extent of Mid-Century's liability for underinsured motorist insurance under the policy and a determination of whether Mid-Century's

refusal to provide coverage was vexatious and unreasonable under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1992)).

Reversed and remanded.

KUEHN, P.J., and GOLDENHERSH, J., concur.