# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Burcham v. West Bend Mutual Insurance Co., 2011 IL App (2d) 101035**

---

| | |
|---|---|
| Appellate Court Caption | CURTIS BURCHAM, Plaintiff-Appellee, v. WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1035 |
| Filed | November 21, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for injuries plaintiff suffered while driving his employer's truck within the scope of his employment where his employer had a workers' compensation policy and a policy on the truck providing uninsured and underinsured coverage and plaintiff sought a declaratory judgment that certain damages for which he sought uninsured motorist coverage were not precluded under a policy limitation by payments he was entitled to through workers' compensation, the trial court properly allowed plaintiff to claim damages for disfigurement, increased risk of future harm, and pain and suffering under the policy on the truck, but the trial court erred in allowing plaintiff to claim damages for loss of a normal life, the amount discounted from his medical expenses, and the loss of earnings in excess of that paid through workers' compensation. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-MR-19; the Hon. Michael J. Colwell, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Bill Porter, of Chilton, Yambert & Porter LLP, of Geneva, for appellant. |
| | |
| | Paul G. Krentz, of Kinnally, Flaherty, Krentz & Loran, P.C., of Aurora, for appellee. |
| | |
| Panel | JUSTICE BOWMAN delivered the judgment of the court, with opinion. Presiding Justice Jorgensen specially concurred, with opinion. Justice McLaren concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1    Plaintiff, Curtis Burcham, filed a declaratory judgment action against defendant, West Bend Mutual Insurance Company (West Bend). Plaintiff sought a declaration that certain damages for which he sought uninsured motorist coverage were not precluded under a policy limitation by payments he was entitled to receive through workers' compensation. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in plaintiff's favor. We affirm in part and reverse in part.

¶ 2                                    I. BACKGROUND

¶ 3    On October 18, 2007, plaintiff was involved in a motor vehicle accident allegedly caused by an uninsured driver. According to plaintiff, when the accident occurred he was driving a truck owned by his employer, P&M Mercury Mechanical Corporation (P&M), and was acting within the scope of his employment. As a result of the accident, plaintiff underwent several surgeries. P&M had a workers' compensation policy with defendant, as well as a motor vehicle policy providing uninsured and underinsured motorist coverage.

¶ 4    Under the workers' compensation policy, defendant paid $490,879.71 in plaintiff's medical expenses as of January 2, 2010. This amount had been discounted from $679,404.67 in charges from the various medical providers. Under the workers' compensation policy, defendant has also paid plaintiff over $100,000 in temporary total incapacity for work payments, and it continues to pay him $925.11 per week, which represents two-thirds of his prior average weekly wage. At the time of briefing this appeal, the workers' compensation claim was still open because no permanency award had been made.

¶ 5    In addition to workers' compensation coverage, plaintiff sought uninsured motorist coverage from defendant through P&M's motor vehicle policy. The endorsement for uninsured motorist coverage states: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' " Central to this case, the policy also contains the following limitation provision:

"No one will be entitled to receive duplicate payments for the same elements of 'loss' under this Coverage Form and any Liability Coverage Form, Medical Payments Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

\*\*\*

*We will not pay for any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law*." (Emphasis added.)

The policy further requires the arbitration of disputes about the amount of damages. It states, "If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle' or do not agree as to the amount of damages, then the disagreement will be arbitrated."

¶ 6    P&M's policy also has an *under*insured motorist endorsement, with a limitation provision stating that the "Limit of Insurance for this coverage shall be reduced by all sums paid or payable" under "any workers' compensation, disability benefits or similar law."

¶ 7    On January 14, 2010, plaintiff filed a declaratory judgment action against defendant. He alleged that on February 11, 2008, he demanded arbitration on his uninsured motorist claim, under the policy. Plaintiff cited to the Illinois Pattern Jury Instructions in arguing that, in his uninsured motorist claim, he was eligible to seek compensation for: (1) disfigurement resulting from the injuries; (2) loss of a normal life experienced and reasonably certain to be experienced in the future; (3) increased risk of future harm resulting from the injuries; (4) pain and suffering experienced and reasonably certain to be experienced in the future; (5) the reasonable expense of medical care received and the present cash value of treatment reasonably certain to be received in the future; (6) the value of earnings and benefits lost and the present cash value of those reasonably certain to be lost in the future; and (7) the reasonable expense of necessary help required as a result of the injuries and the cash value of such future expenses. Plaintiff alleged that compensation for these elements of loss would not be duplicative payments for the same elements of loss compensated in his workers' compensation claim, and he sought a declaration to this effect.

¶ 8    On July 1, 2010, plaintiff filed a motion for summary judgment, and defendant filed a cross-motion for summary judgment on August 13, 2010. The trial court entered an order on September 14, 2010, granting plaintiff's motion for summary judgment and denying defendant's motion. It found that plaintiff was entitled to make claims for the following elements of loss in the uninsured motorist arbitration: (1) disfigurement not awarded in his workers' compensation claim; (2) loss of a normal life; (3) increased risk of future harm; (4) pain and suffering; (5) "the discounted amount of the medical expenses totaling $188,524.96," pursuant to *Wills v. Foster*, 229 Ill. 2d 393 (2008); and (6) loss of earnings in excess of the amount actually paid in his workers' compensation claim. The order further stated that plaintiff had withdrawn his claim for caretaking expenses. Defendant timely appealed.

¶ 9                                    II. ANALYSIS

¶ 10      On appeal, defendant argues that the trial court erred in entering summary judgment for
plaintiff and allowing him to claim damages for disfigurement, loss of a normal life, the
discounted amount of medical expenses, and loss of earnings greater than the amount paid
from workers' compensation. Defendant does not dispute the trial court's grant of summary
judgment for the damage claims for increased risk of future harm or pain and suffering.
Summary judgment is appropriate only where the pleadings, affidavits, depositions,
admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving
party, show that there is no genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law. *Zekman v. Direct American Marketers, Inc.*, 182 Ill.
2d 359, 374 (1998). We review *de novo* a grant of summary judgment. *Virginia Surety Co.
v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Also, the construction
of an insurance policy is a question of law, to which *de novo* review applies. *Id.*

¶ 11      We construe an insurance policy by ascertaining and giving effect to the parties' intent,
as expressed in the policy language. *West American Insurance Co. v. Yorkville National
Bank*, 238 Ill. 2d 177, 184 (2010). We give unambiguous words in the policy their plain,
ordinary, and popular meanings. *Id.* We will read narrowly a policy provision purporting to
exclude or limit coverage and apply it only where its terms are clear, definite, and specific.
*Gillin v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). Where
such a provision is ambiguous, it will be construed liberally in favor of coverage. *Founders
Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010).

¶ 12      At issue here is the limitation provision in defendant's uninsured motorist policy, which
states: "We will not pay for any element of 'loss' if a person is entitled to receive payment
for the same element of 'loss' under any workers' compensation, disability benefits or similar
law." "Loss" is defined as "direct and accidental loss or damage."


¶ 13                                    A. Disfigurement

¶ 14      Defendant first argues that disfigurement is compensated under section 8(c) of the
Workers' Compensation Act (Act) (820 ILCS 305/8(c) (West 2008)), so it is an element of
loss excluded by the uninsured motorist policy's limitation provision. However, section 8(c)
also provides: "No compensation is payable under this paragraph where compensation is
payable under paragraphs (d), (e) or (f) of this Section." 820 ILCS 305/8(c) (West 2008).
Those sections cover compensation for wage loss differential, loss of use of a body part, and
permanent disability.

¶ 15      Defendant argues that if, as a result of the same accident, an employee suffers
disfigurement to one part of his body, such as his face, and suffers disability to another body
part, such as his leg, he will be entitled to recover under both section 8(c) for disfigurement
and section 8(e) for specific loss. See *Corn Products Co. v. Industrial Comm'n*, 51 Ill. 2d
338, 342 (1972) (employee could receive compensation for both disfigurement to face and
injury to arms). We note that *Corn Products* relied on a provision of the statute stating:
" 'When the disfigurement is to the portions of the body designated in this paragraph, as a
result of any accident, *for which accident compensation is not payable under paragraphs (d),*

*(e) or (f) of this Section*, compensation for such disfigurement may be had under this paragraph.' " (Emphasis added.) *Id.* (citing Ill. Rev. Stat. 1967, ch. 48, ¶ 138.8(c)). This language is no longer present in the statute (see 820 ILCS 305/8(c) (West 2008)), meaning that any award under section (d), (e), or (f) would negate a disfigurement award. In any event, we agree with plaintiff that he is not automatically entitled to receive payment for disfigurement under section 8(c). Therefore, the trial court did not err in allowing him to seek, within arbitration, compensation for disfigurement not awarded in his workers' compensation claim.

¶ 16                              B. Loss of a Normal Life

¶ 17    Defendant next argues that loss of a normal life falls within the policy's limitation provision, because plaintiff is entitled to be compensated for that element of loss under the Act, in that loss of a normal life is the same basic element of loss as disability. Defendant cites a range of Illinois Workers' Compensation Commission awards and argues that they show that the arbitrators considered aspects of loss of a normal life, such as the inability to enjoy television, to sleep or concentrate, or to perform daily life activities, in awarding disability. Defendant notes that the pattern jury instructions allow for either loss of a normal life or disability to be awarded, but not both. See Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2011) (hereinafter, IPI Civil (2011) No. 30.04.01).

¶ 18    Plaintiff responds that any award he receives in his workers' compensation case must be based on categories set forth in the Act, which provides for a wage loss differential, permanent partial disability, and permanent total disability. See 820 ILCS 305/8 (West 2008). Plaintiff argues that those categories have different definitions than loss of a normal life and therefore are not duplicative or the "same element of loss." Plaintiff notes that the pattern jury instructions define loss of a normal life as "the temporary or permanent diminished ability to enjoy life. This includes a person's inability to pursue the pleasurable aspects of life." IPI Civil (2011) No. 30.04.02. Plaintiff maintains that, in contrast, compensation under the Act is awarded based on a mathematical formula, applying the employee's wage rate and a number of weeks of compensation for the specific body part that was injured. He argues that loss of a normal life is not a separate and distinct compensable measure of damages in a workers' compensation case and that therefore he is entitled to make a claim in arbitration for loss of a normal life.

¶ 19    "The term 'loss of a normal life' has almost universally been interpreted as a component of disability which compensates for a change in the plaintiff's lifestyle." *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1135 (2000). The two terms implicate many of the same factors, and under certain circumstances, the terms can be used interchangeably. *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1030 n.1 (2005). Accordingly, the pattern jury instructions give "disability" and "[l]oss of a normal life" as alternative instructions (IPI Civil (2011) No. 30.04.01), and a court is not permitted to instruct the jury on both (*Poliszczuk v. Winkler*, 387 Ill. App. 3d 474, 488 (2008)). As such, we agree with defendant that the two phrases cover the same element of loss, even if they have different definitions. Plaintiff himself relies on pattern instructions in claiming damages for loss of a normal life,

-5-

and he cannot avoid the fact that they do not allow him to seek compensation for both disability and loss of a normal life. Regardless of the manner used in computing the disability, the Act clearly compensates for various forms of disability. Because disability is equivalent to the "element of loss" of loss of a normal life, the trial court erred in holding that plaintiff could seek in arbitration compensation for loss of a normal life.

¶ 20                                   C. Medical Expenses

¶ 21    Defendant further argues that the trial court erred in declaring that plaintiff could claim in arbitration the difference of $188,524.96 between the billed medical expenses and the negotiated amount paid. The trial court relied on *Wills* in allowing plaintiff to seek the amount discounted from the medical expenses. That case dealt with the collateral source rule, which provides that payments or benefits an injured party receives from a source independent of, and collateral to, the tortfeasor will not be credited against the tortfeasor's liability. *Wills*, 229 Ill. 2d at 399. *Wills* held that a plaintiff may seek to recover the full billed amount of medical expenses from the tortfeasor, regardless of whether private insurance or Medicaid or Medicare paid a reduced amount. *Id.* at 413-14.

¶ 22    Defendant argues that, here, medical expenses are an element of loss compensated under section 8(a) of the Act, which requires the employer to pay for all "necessary first aid, medical and surgical services *** reasonably required to cure or relieve from the effects of the accidental injury." 820 ILCS 305/8(a) (West 2008). Defendant maintains that, under the plain language of the limitation provision, it is not required to pay for any element of loss if the individual is entitled to receive payment for the same element of loss under workers' compensation, and the fact that the amount of medical expenses paid differs from the amount of medical expenses charged is irrelevant, as it is the nature of the element of loss at issue rather than the amount of the element of loss. Defendant also argues that plaintiff's reliance on the collateral source rule as set forth in *Wills* is misplaced because an uninsured motorist claim is not a tort claim like in Wills, but, rather, is a contract matter. Defendant analogizes this case to *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 998 (2006), where the appellate court held that section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 2002)), dealing with joint and several liability, did not apply to an uninsured motorist arbitration proceeding because it was not an action "based on negligence" as required by the statute.

¶ 23    Plaintiff argues: "By definition, the discounted amount of the medical bills is only a portion of the medical bills–not the entire amount of the bills–and hence, not the 'same element' of the loss." Plaintiff argues that the policy language is ambiguous and that, if defendant had intended to prevent him from making any claim for medical expenses in arbitration, it could have easily drafted the policy to provide that it would not pay for any element of loss if "any portion of that loss" (as opposed to the "same element of loss") were paid for under the workers' compensation law. Plaintiff additionally argues that, even though his uninsured motorist claim is a contract case, he is allowed to introduce the medical bills into evidence because the policy specifically provides that evidentiary rulings are to be based on local rules of law; the policy states, "local rules of law as to arbitration procedure and

evidence will apply."

¶ 24    We address plaintiff's last point first. At least one court has found the phrase, "local rules of law as to arbitration procedure and evidence will apply," to be ambiguous. See *U.S. Fidelity & Guarantee Co. v. Hutchinson*, 710 A.2d 1343, 1347 (Conn. 1988). Even assuming, *arguendo*, that "local rules of law" refers to the laws followed by state courts, the policy at issue in *Hall* contained a provision referring to state rules of evidence, but the appellate court still stated that the joint and several liability statute did not "contemplate the situation where the insurance company, not the drivers involved in the accident, is a party to the action." *Hall*, 363 Ill. App. 3d at 998. The same logic could arguably be applied to the supreme court's analysis of the collateral source rule in *Wills*. In any event, regardless of whether the collateral source rule generally may be applied in arbitration hearings for uninsured motorist coverage, here we are first limited by the contractual language of the policy.

¶ 25    Although plaintiff maintains that the phrase "same element of loss" is ambiguous, a policy provision does not become ambiguous just because the parties disagree about its meaning. *Munoz*, 237 Ill. 2d at 433. Instead, it is ambiguous if the language is susceptible to more than one reasonable interpretation. *Id.* We note that the *under*insured motorist limitation provision states that it "shall be reduced by all sums paid or payable" under workers' compensation; this is clearly a setoff provision allowing defendant to reduce the damages awards by the dollar amounts paid under workers' compensation. The uninsured motorist provision, in contrast, states that defendant will not pay for "any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' " under workers' compensation. Thus, the uninsured motorist provision covers categories of loss rather than dollar amounts of loss. *Cf. People v. Santiago*, 236 Ill. 2d 417, 432 (2010) (by using different language in different instances, the legislature indicated that it intended different results). We agree with defendant that the plain and ordinary meaning of the phrase "element of loss" would include the broad category of medical expenses, regardless of the dollar amounts paid. For plaintiff to obtain the difference between the billed rate and the amount paid would mean treating the uninsured motorist provision the same as the setoff in the underinsured motorist provision, which it clearly is not. Plaintiff's reading also gives no meaning to the term "element" in the phrase "element of loss." We conclude that, because plaintiff is entitled to receive payment for medical expenses under workers' compensation, he may not claim any medical expenses in arbitration, and the trial court erred in ruling otherwise. Our result is consistent with other jurisdictions that have examined the same policy language. *Cf. Greenfield v. Cincinnati Insurance Co.*, 737 N.W.2d 112, 118, 123 (Iowa 2007) (finding that under identical limitation language, the jury's verdicts for medical expenses and past wages were "duplicative" of workers' compensation payments because they covered the same type of injury); *St. Paul Fire & Marine Insurance Co. v. Employers Insurance Co. of Nevada*, 146 P.3d 258, 263 (Nev. 2006) (stating that identical provision was not a dollar-for-dollar reduction in benefits available, and that elements of loss would include "medical expenses and lost wages paid to the injured worker").

¶ 26                                    D. Loss of Earnings

¶ 27        Last, defendant argues that the trial court erred in ruling that plaintiff could claim the loss
of earnings in excess of the amount actually paid on his workers' compensation claim. As
with the medical expenses argument, defendant maintains that plaintiff has received payment
for lost wages under workers' compensation and therefore has been compensated for that
element of loss.

¶ 28        Plaintiff argues that under the Act he is receiving only two-thirds of his lost earnings
based upon his average weekly wage for the year preceding the accident, excluding overtime.
See 820 ILCS 305/10 (West 2008). Accordingly, he argues that, in his workers'
compensation case, he is not entitled to and will not be compensated for one-third of his past
lost earnings, any overtime he would have worked since the accident, the yearly increase in
hourly wage from 2006 to 2007 received by active union members, and the decreased
monthly pension benefits from not being an active union member. Thus, plaintiff argues that
these are not the same element of loss as the payments he is receiving through workers'
compensation.

¶ 29        Consistent with our analysis of medical payments, we agree with defendant that loss of
earnings would be a category of loss included in the phrase "element of loss." Regardless of
the dollar amount, plaintiff is receiving payment for lost earnings under the Act and he thus
may not seek such damages in arbitration. Just as with his argument regarding medical
payments, plaintiff's interpretation would treat the limitation provision as a setoff provision,
which is contrary to the provision's plain language. Therefore, the trial court erred in holding
that plaintiff could claim in arbitration the loss of earnings over the amount paid in his
workers' compensation case.

¶ 30        The dissent cites *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48 (2011), where our
supreme court stated that "by providing for underinsured-motorist coverage in addition to
uninsured-motorist coverage, 'the legislature avoided the absurdity of a situation where a
policyholder would receive fewer benefits in the fortuitous event of being injured by an
underinsured rather than by an uninsured motorist.' " *Id*. at 57-58 (quoting *Sulser v. Country
Mutual Insurance Co.*, 147 Ill. 2d 548, 557 (1992)). The dissent posits that it is equally true
that a plaintiff should not receive fewer benefits by being injured by an uninsured motorist
rather than an underinsured motorist. *Infra* ¶ 44. In fact, *Sulser*, cited by the *Phoenix
Insurance Co.* court, directly states as much. *Sulser*, 147 Ill. 2d at 558.

¶ 31        While *Sulser* admittedly made broad statements about the similar public policies behind
the uninsured and underinsured motorist statutes, our supreme court subsequently
distinguished between those public policies. "The purpose of underinsured coverage is to put
the insured in the same position he or she would have occupied had the at-fault vehicle
carried liability coverage in the same amount as selected by the insured in his or her
underinsured motor vehicle policy" (*State Farm Mutual Automobile Insurance Co. v.
Villicana*, 181 Ill. 2d 436, 446 (1998)), while "the purpose of the uninsured-motorist statute
is to place the insured policy holder in substantially the same position he or she would
occupy if the uninsured driver had been insured at the statutorily mandated *minimum*"
(emphasis added) (*id.* at 449). See *Estate of Sinn v. Mid-Century Insurance Co.*, 288 Ill. App.

3d 193, 196-97 (1997) (similarly distinguishing the public policies behind the underinsured and uninsured motorist insurance statutes); see also *Phoenix Insurance Co.*, 242 Ill. 2d at 58 ("Despite the interrelatedness of uninsured-motorist and underinsured-motorist coverages, relevant differences exist between the statutory mandates."); *cf. Veach v. Farmers Insurance Co.*, 460 N.W.2d 845, 848 (Iowa 1990) (uninsured motorist coverage's purpose is to ensure minimum compensation to victims, whereas the goal of underinsured motorist coverage is to fully compensate the victim to the extent of his injuries).

¶ 32    Here, the use of the phrase "element of loss" in the limitation provision of the uninsured motorist endorsement unambiguously refers to categories of loss, rather than dollar amounts of loss. The limitation provision does not violate public policy, as plaintiff has already recovered from the same insurer amounts vastly beyond the statutorily mandated minimum,[1] and he is eligible to recover under the uninsured motorist endorsement additional amounts for categories of loss not covered by workers' compensation. See also *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 158 (1995) (the payment of insurance premiums does not always create a reasonable expectation that the insured will receive the full amount of coverage where there is clear policy language excluding such coverage).

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we affirm the trial court's grant of summary judgment for plaintiff insofar as it allows him to claim in arbitration damages for disfigurement. We also affirm its grant of summary judgment regarding his claims for increased risk of future harm and pain and suffering, as these claims were not challenged on appeal. However, we reverse the trial court's grant of summary judgment for plaintiff on his ability to claim damages for loss of a normal life, the amount discounted from his medical expenses, and loss of earnings in excess of that paid through workers' compensation. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we grant summary judgment for defendant on these issues and hold that plaintiff is not entitled to seek such damages in arbitration.

¶ 35    Affirmed in part and reversed in part.

¶ 36    PRESIDING JUSTICE JORGENSEN, specially concurring:

¶ 37    I write separately because I wish to emphasize that the issues presented in this case involve questions of contract interpretation. The parties' briefs do not raise any public policy-related questions or argue that P&M's policy or any provisions therein are, for example, invalid or unconscionable. Although I do not mean to suggest that public policy concerns are irrelevant, I respectfully suggest that, in the absence of any briefing by the parties on the public policy implications of their suggested interpretations of P&M's policy, the dissent's reliance on, in my view, broad public policy pronouncements in the case law is of limited

---

[1]Motor vehicle policy limits must be at least $20,000 per person and $40,000 per accident for personal injury and death. 625 ILCS 5/7-601(a), 7-203 (West 2006).

value in assessing the issues properly before this court. Further, I believe that the answer to the public policy concerns the dissent raises–the potential disparity in coverage under the policy's uninsured and underinsured provisions given the similar (perhaps identical) purposes underlying the relevant statutes–is not so obvious that, in the absence of briefing, it is proper for this court to address it.

¶ 38     JUSTICE McLAREN, concurring in part and dissenting in part:

¶ 39     I partially dissent because I believe that the judgment should be affirmed in its entirety. I disagree with the majority's interpretation of the contract made and the determination that its language is clear and unambiguous. I believe that plaintiff is entitled to at least attempt to recover the full amount for both his medical expenses and his lost wages, contrary to the determination of the majority. The principal purpose of uninsured and underinsured motorist coverage was related by our supreme court in *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57-58 (2011):

> "The 'principal purpose' of the mandatory liability insurance requirement is 'to protect the public by securing payment of their damages.' *Progressive Universal*, 215 Ill. 2d at 129. To further that end, uninsured-motorist coverage is required ' "to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act [citation]." ' *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 176 (1977) (quoting *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1, 4 (1970)). In *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555-58 (1992), this court examined the legislative history supporting the underinsured-motorist coverage provision and concluded that the legislative purpose of underinsured-motorist coverage is the same as that of uninsured-motorist coverage, '*i.e.*, to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.' The court noted that '[u]ninsured and underinsured motorist policies provide virtually the same coverage to the insured,' and that by providing for underinsured-motorist coverage in addition to uninsured-motorist coverage, 'the legislature avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist.' *Id.* at 557. Thus, as we have recently noted, under Illinois law liability, uninsured-motorist, and underinsured-motorist coverage provisions are 'inextricably linked.' *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 404 (2010). All three serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents."

¶ 40     Consistent with the purpose stated above, the endorsement for uninsured motorist coverage provided as follows: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor

vehicle.' "[2] However, the defendant claims that the definition of an "element of 'loss' " does *not* entitle plaintiff to be fully compensated. The majority adopts defendant's argument and has denied plaintiff full recovery for medical expenses and lost wages.

¶ 41    I do not believe that the majority's interpretation is consistent with either the principal purpose of mandatory liability insurance, related above in *Phoenix Insurance*, or the supreme court's statement therein relating to uninsured motorist coverage providing full recovery as if the liable owner were insured. Further, the majority essentially redacts portions of the policy that relate to duplicate payments. The majority interprets the phrase "element of 'loss' " as being related to the *type* of damages, and not as the *monetary quantity* of damages, thus making the language regarding "all sums" and duplicate payments superfluous. Duplicate payment has never been interpreted to mean that, if one tortfeasor pays a penny, then the other tortfeasor pays nothing. The term relates that, if the plaintiff is *fully* compensated for his actual losses, he should not be given a second payment that would result in a windfall. There is no probability of a duplicate payment under the interpretation adopted by the majority. There is a certainty that plaintiff would *not* receive a windfall under the trial court's interpretation *vis-á-vis* the medical expenses and lost wages. Thus, the majority has not properly interpreted the policy because it has made a prominent section of the contract meaningless. See *Board of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 190 (2010) (a contract should be interpreted "as a whole, giving meaning and effect to every provision when possible, and a court will not interpret the agreement so as to nullify provisions or render them meaningless").

¶ 42    The majority posits that "[r]egardless of the dollar amount, plaintiff is receiving payment for lost earnings under the Act." *Supra* ¶ 29. Under this "analysis," if plaintiff is paid a penny by workers' compensation for lost earnings and medical expenses, there will be no further payment. The possibility or probability of a duplicate payment is nil; however, the probability of plaintiff not being fully compensated for actual loss of earnings is a certainty. So much for the recovery of "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' "

¶ 43    The majority also attempts to rationalize its interpretation by including the red herring:

"[P]laintiff has already recovered from the same insurer amounts vastly beyond the statutorily mandated minimum, and he is eligible to recover under the uninsured motorist endorsement additional amounts for categories of loss not covered by workers' compensation." *Supra* ¶ 32.

While this is true, it is also irrelevant. No one, not even defendant, argues that plaintiff was not entitled to recover these "vast" sums. Plaintiff's rightful recovery of sums to which he is entitled is not an argument against his recovery of other sums to which he is also entitled. The majority's comment is nothing more than a gratuitous *non sequitur* without legal significance.

¶ 44    Further, the majority acknowledges but never addresses the existence of the underinsured

---

[2]Paying "all sums" due reasonably means that sums or portions of a loss are deemed an element of loss, if full recovery is to be achieved.

-11-

motorist endorsement of P&M's policy. The endorsement contained a limitation provision that stated that the " 'Limit of Insurance for this coverage shall be reduced by all sums paid or payable' under 'any worker's compensation, disability benefits or similar law.' " *Supra* ¶ 6. Thus, had the driver who struck plaintiff had inadequate insurance, rather than no insurance, plaintiff would have been allowed to seek payment for *all* of his lost earnings, which then would have been reduced by his workers' compensation award, instead of being limited to the award. The supreme court spoke of the legislative intent to avoid the absurd situation " 'where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist.' " See *Phoenix Insurance*, 242 Ill. 2d at 58 (quoting *Sulser*, 147 Ill. 2d at 557). However, as liability, uninsured motorist, and underinsured motorist coverage are " 'inextricably linked' " and serve the same public policy of "ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents" (*Phoenix Insurance*, 242 Ill. 2d at 58),[3] I believe that it is equally absurd that plaintiff is denied recovery of "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' " because the other driver was uninsured, rather than underinsured.

¶ 45    I submit that there is only one reasonable interpretation to be given to the "element of 'loss' ": it relates to the amount of money damages for a particular injury. Therefore plaintiff should be denied the money damages for medical expenses and lost wages only to the extent that duplicate payments would be made, resulting in a windfall to plaintiff. Even were we to assume that the majority's interpretation is reasonable, plaintiff is still entitled to recovery. When the words of an insurance policy are susceptible to more than one reasonable meaning, then they are ambiguous; therefore they must be construed in favor of coverage and against the insurer that drafted the policy. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). This is especially true with respect to exclusionary clauses; where such a clause is relied upon to deny or limit coverage, it will be read narrowly and will be applied only where its terms are clear, definite, specific, and free from doubt. *Czapski v. Maher*, 2011 IL App (1st) 100948, ¶ 19. Here, defendant attempts to use the phrase "element of 'loss' " to limit the plaintiff's recovery of "all sums" that plaintiff "is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' " The term "element of 'loss' " is susceptible to more than one reasonable interpretation, and it is also ambiguous in its relationship to the policy's stated provision that defendant will pay "all sums." These ambiguities must inure to plaintiff's benefit.

¶ 46    The majority has misinterpreted the policy to make a substantial portion of it meaningless and has simultaneously abrogated the principal purpose of uninsured and underinsured insurance coverage enunciated in the endorsements and related in *Phoenix Insurance*.

¶ 47    P&M paid premiums to defendant for both workers' compensation insurance *and*

---

[3]I find it curious that the majority attempts to limit the supreme court's pronouncements in *Phoenix Insurance* with statements that the court made *prior* to *Phoenix Insurance*. See *supra* ¶ 30. We generally look to the court's most recent statements to determine the mind of the court and the current state of the law.

uninsured motorist coverage. However, defendant did not fully pay out for the coverage it supposedly provided. Both policies were provided to a commercial enterprise; one can hardly imagine a situation where a P&M employee, eligible to collect for lost wages and medical expenses because he was injured when hit by an uninsured motorist, would not be eligible to receive payments for lost wages and medical expenses under workers' compensation. P&M certainly does not get value for its uninsured motorist premiums; no P&M employee making a claim under the uninsured motorist coverage will ever be paid "all sums" to which he "is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' " The majority has allowed defendant to treat this provision of its uninsured motorist policy as mere puffery. See *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 594 (2008). We should decline to adopt an interpretation that leads to illusory insurance coverage. See *Illinois Farmers Insurance Co. v. Keyser*, 2011 IL App (3d) 090484, ¶ 15.

¶ 48     The special concurrence posits that this case involves contract interpretation. I agree. However, I believe that, in interpreting the contract, we are supposed to interpret it as a whole and attempt to interpret all relevant sections thereof consistently with both the extant law and the public policies embodied in the law. See *Enterprise Leasing Co. of St. Louis v. Hardin*, 2011 IL App (5th) 100201, ¶ 22. This dissent's comparison of the uninsured and underinsured coverages is to point out the inconsistencies in the majority's interpretation.

¶ 49     In declining to address the comparison between uninsured and underinsured coverage because the briefs did not do so, the majority fails to comprehend that, so long as the issue is raised, the proponent does not lose simply because the arguments in support thereof are not the ones that the court adopted as its *ratio decidendi*. This court may review the entire record in order to affirm on any basis, regardless of whether the reasoning of the trial court was correct. *Dunlap v. Illinois Founders Insurance Co.*, 250 Ill. App. 3d 563, 569 (1993). The special concurrence is correct that the issue is interpretation of the contract, but then it incorrectly narrows its focus to only one portion of the contract instead of the entire contract, the contractual relationship between the parties, and the underlying purpose of uninsured motorist coverage. Such coverage is supposed to make the insured whole, not limit payments to only one source when that one source does not make the insured whole. To this extent, the majority's interpretation of the contract is against public policy while simultaneously redacting the portion of the contract discussing duplicate payments.

¶ 50     In Monty Python's "Insurance Sketch," the Reverend Morrison sought compensation for the damage done to his car when it was hit by a truck while sitting in a garage. Mr. Devious, his insurance man, told him, "It states quite clearly that no claim you make will be paid. *** You see, you unfortunately plumped for our 'Neverpay' policy, which, you know, if you never claim is very worthwhile . . . but you had to claim, and, well, there it is." The majority's interpretation of P&M's uninsured motorist coverage makes this amusing satire an unfortunate reality, due to its failure to consider the impact of narrowly focusing on one portion of the contract. The portion of the contract interpreted by the majority and emphasized by the special concurrence is irreconcilable with the established legal concept of duplicate payments, the public policy that uninsured motorist coverage is intended to cover the damages for which the uninsured driver is liable, and the precept that coverage

should not be illusory. Therefore, I dissent in part.