In re UNITRUST
CORPORATION, Debtor.

LAKE HOLIDAY PROPERTY OWN-
ERS' ASSOCIATION, Plaintiff,

v.

UNITRUST CORPORATION, Defendant.

Bankruptcy No. 86 B 5280.

No. 87 C 4728.

United States District Court,
N.D. Illinois, E.D.

April 1, 1988.

Melvin Hoffman, Hoffman, Mueller & Creedon, Ottawa, Ill., for claimant-appellant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Appellant Lake Holiday Property Owners' Association ("the Association") has appealed an order of the Bankruptcy Court denying its claim as a secured creditor in a Chapter 11 proceeding instituted by appellee Unitrust Corporation ("Unitrust"). The claim had alleged that Unitrust owed the Association certain stipulated sums levied as assessments pursuant to recorded restrictive covenants ("the Restrictive Covenants") on land Unitrust had acquired by tax deeds ("the Tax Deeds"). The bankruptcy court, in a well-documented, well-reasoned and well-written opinion, ruled that the land was no longer subject to the Restrictive Covenants because the issuance of the Tax Deeds extinguished them. This appeal followed.

## FACTS

In 1982, Unitrust acquired by Tax Deeds lots 45, 1022, 1024, 1787, 1804, and 1865 of the Lake Holiday Subdivision ("the Subdivision") in LaSalle County, Illinois. The lots had been subject to the Restrictive Covenants, which required all owners of lots within the Subdivision to pay annual charges for "repairs and maintenance" as levied by the Board of Directors of the Association. The Tax Deeds were issued pursuant to court orders by the Circuit Court for LaSalle County and stated that Unitrust would receive fee title to each lot "free and clear of all right, title and interest of Lake Holiday Property Owners' Association, Inc. ...." The court orders were entered on notices to the Association and were never appealed.

Since Unitrust acquired the lots, the Association has levied annual charges and assessments totalling $10,993.24 against them. Unitrust has not paid any of the assessments.

In filing its claim for these assessments with the bankruptcy court, the Association argued that, although the Tax Deeds did extinguish the amounts due and owing for charges levied prior to their issuance, they did not extinguish the Restrictive Covenants. The Association based its position on the Illinois Revenue Act, Ill.Rev.Stat. ch. 120, ¶ 747b ("§ 747b"). Section 747b provides, in pertinent part:

No tax deed issued with respect to any real property sold pursuant to this Act extinguishes or affects any easement, covenant running with the land or right-of-way for water, sewer, electricity, gas, telephone or other public service use

which was created, on or over that real property before the time that real property was sold pursuant to this Act and which is evidenced by a recorded instrument or by wires, poles, pipes, equipment or other public service facilities.

According to the Association, § 747b mandates that *all* easements, *all* covenants running with the land, and *some* rights of way—i.e., "utilities" rights of way—remain unaffected by the issuance of tax deeds. The bankruptcy court, however, determined that the phrase "any easement, covenant running with the land or right-of-way for water, sewer, electricity, gas, telephone or other public service use" means, in effect, "utilities" easements, "utilities" covenants, and "utilities" rights of way only. Thus, the court found, "the law by its express terms protects utilities easements, covenants and right-of-way, but not other rights."

On the basis of this finding, the bankruptcy court ruled that, in purporting to extinguish the Restrictive Covenants,[1] the Tax Deeds were consistent with Illinois law, and that, accordingly, Unitrust's lots were not subject to the Restrictive Covenants.

The bankruptcy court did not, however, rest its ruling on this ground alone. Instead, as a "further and separate ground," the court ruled that the Association's failure to appeal the state court's orders conveying fee title to Unitrust free and clear of the Restrictive Covenants collaterally estopped the Association from contesting the effect of the Tax Deeds in the bankruptcy proceeding. Thus, the court ruled, even if § 747b did provide that tax deeds generally cannot extinguish the sorts of restrictive covenants at issue here, the Association's failure to challenge the Tax Deeds in the state courts would prevent it from having them invalidated now.

## DISCUSSION

The Association's appellate brief states that the only issue presented for review is as follows:

Does issuance of a Tax Deed under the Illinois Revenue Act nullify and extinguish Restrictive Covenants which run with the land?

The Association argues that, because § 747b protects *all* covenants that run with the land, the answer to this question must be "no." Accordingly, the Association contends, Unitrust's lots remain subject to the Restrictive Covenants, and this court must reverse the bankruptcy court's order. Yet, even were this court to agree with the Association that § 747b applies to all covenants that run with the land, the Association could not prevail in its appeal.

As noted above, the bankruptcy court specifically found, as an independent basis for its ruling in favor of Unitrust, that the Association's failure to challenge the Tax Deeds—which purport to extinguish the Restrictive Covenants—in the state court proceedings collaterally estops the Association from challenging them here. Neither in its Statement of Issues on Appeal nor in its Appellate Brief did the Association contest this aspect of the bankruptcy court's ruling. It thus waived its right to appeal the issue. *See* Bankruptcy Rule 8006 (requiring filing of statement of issues to be presented; Bankruptcy Rule 8010(a)(1) ("The brief of the appellant shall contain . . . [a] statement of issues presented . . ."). *Cf. Publisher's Resource v. Walker–Davis Publications,* 762 F.2d 557, 560 (7th Cir. 1985); *Cannon v. Teamster's & Chauffeurs Union,* 657 F.2d 173, 177 (7th Cir. 1981).

The waiver is fatal to the Association's appeal. Whether or not the bankruptcy judge's ruling on the collateral estoppel issue was correct,[2] the Association's failure

---

1. Although the Association does not appear to have contested the issue, the bankruptcy court specifically found that the language employed by the state court orders and the Tax Deeds— i.e., "free and clear of all right, title and interest of [the Association]"—was intended to mean *"all*

right, title and interest of [the Association], *both pre- and post-tax deed....*" (Emphasis added).

2. The bankruptcy court recognized that the one weak link in its collateral estoppel finding lay in its determination that the state court had actually decided the issue present here—i.e., whether

to appeal it means that the ruling will stand. Since this ruling serves as an independent basis for the bankruptcy court's ruling, any resolution by this court of the § 747b issue would be advisory only.

### CONCLUSION

Accordingly, the appeal of Lake Holiday Property Owners' Association must be denied.

the Tax Deeds would extinguish the Restrictive Covenants. It was possible, the bankruptcy judge noted, for the Association to argue that the language employed by the state court in ordering the issuance of the Tax Deeds was meant only to extinguish those obligations incurred by the lots prior to the date the Tax Deeds were issued; if so, then collateral estoppel would not bar the Association from contesting in these proceedings the effect of the Tax Deeds on the Restrictive Covenants. Yet, despite his recognition of possible ambiguity in the state court order, the bankruptcy judge ultimately ruled that the order did, in fact, apply to both pre- and post-tax deed assessments and, accordingly, that the Association is precluded from litigating that issue here.

Before precluding a party from litigating an issue on the basis of that party's failure to appeal a prior court's ruling, the later court must do more than determine the precise issue actually decided in the earlier ruling. The court must also determine that the ruling was sufficiently clear to ensure that the party sought to be bound by it could not have interpreted it differently. Otherwise, parties may suddenly find themselves bound to findings of fact and law which they did not anticipate and which they could and would have appealed had they understood the implications of their failing to do so.

In this case, the Association could have argued with considerable force that it should not be bound by the bankruptcy court's interpretation of the state court order because, even if this court agrees with the bankruptcy court's interpretation, the Association could reasonably have read it differently, and declined to appeal it based on that (erroneous) reading. The Association, however, chose not to address the bankruptcy court's collateral estoppel ruling at all. Thus, it waived this (and any other) argument against that ruling.