SI SECURITIES, Plaintiff and Counterdefendant-Appellant, v. BANK OF EDWARDSVILLE, Defendant and Counterplantiff-Appellee.

Fifth District   No. 5—04—0651

Opinion filed November 4, 2005.

Lawrence O. Taliana, of Taliana, Buckley, Asa & Reames, of Edwardsville, for appellant.

Tad Armstrong, of Armstrong Law Offices, of Edwardsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

This appeal concerns a question of statutory interpretation and involves restrictions governing the Stonebridge subdivision, a residential development in Edwardsville, Illinois. The restrictions were recorded in Madison County in 1988 by the legal owner at the time, the defendant, the Bank of Edwardsville, as the trustee of trust No. 8180. The developer of the subdivision, William Shaw, was the beneficial owner of the trust. (The bank, the trust, and Shaw are hereinafter collectively referred to as the developer.)

The restrictions are lengthy and detailed and grant broad discretion and powers to the developer to ensure that the residences complement one another. The primary purpose of the restrictions is to effectuate certain rules applicable to all lot owners within the subdivision for the protection of each owner's property value. They cover an array of issues, including but not limited to land use, building location, plans and specifications, size, materials, maintenance, roads, landscaping, contractor selection, garbage, easements, and dispute resolution. By their express terms, the restrictions are imposed upon the land and bind successive property owners. They also automatically extend to future additions in the subdivision. Thus, the restrictions are more properly referred to as covenants running with the land (hereinafter covenants). Black's Law Dictionary 365 (6th ed. 1990).

The developer did not pay property taxes on lot numbers 22 and 27. Thereafter, the plaintiff, SI Securities, petitioned for a tax deed. When the developer failed to redeem the property as provided in the Property Tax Code (Code) (35 ILCS 200/22—5 et seq. (West 2002)), SI Securities took title to the lots by a tax deed issued on October 27, 2000.

Two years later, SI Securities filed a complaint in the Madison County circuit court alleging that (1) it had taken title to the lots free of the covenants because they had been extinguished by the tax deed and (2) "an entity who has a contract to purchase" the lots "repeatedly submitted plans" to the developer, who unreasonably refused to approve the plans. SI Securities sought an order from the court declaring the covenants void and, alternatively, an order authorizing SI Securities to construct a home in accordance with the plat plan attached to its complaint.

The developer moved to dismiss the complaint, arguing in part that SI Securities failed to state a cause of action because section 22—70 of the Code (35 ILCS 200/22—70 (West 2002)) expressly provides that a tax deed does not extinguish or affect covenants run-

ning with the land which are created before the tax deed is issued and evidenced by a recorded instrument. Put another way, the developer argued that SI Securities took title to lots 22 and 27 subject to the recorded covenants because section 22—70 of the Code expressly provides that such covenants survive the issuance of a tax deed.

Around the same time the developer moved to dismiss the complaint, its counsel informed SI Securities in writing of its intention to exercise rights granted by the covenants to repurchase the lots on the basis that (1) neither SI Securities nor any agent on its behalf had submitted plans or selected a contractor for approval, (2) the developer had rejected building plans submitted by a third party not known to be connected with SI Securities and no new plans for construction had been submitted, and (3) no foundation excavation or concrete pouring had commenced within 24 months of the date SI Securities took title. At the time, the developer was willing to pay SI Securities an amount approximately equivalent to the amount the developer would have paid had it redeemed the property, *i.e.*, the developer was willing to pay $1,230.28 plus interest, for a total of $1,581.57. The record does not reflect how much SI Securities paid for the tax deed, but it appears that the amount offered by the developer exceeds the amount that SI Securities paid for the deed.

The trial court ordered SI Securities to amend its complaint to set forth particular covenants it contended had been extinguished and to identify which parties were to be bound by the proposed extinguishment. SI Securities filed an amended complaint on May 7, 2004. SI Securities alleged that it had entered into a contract for the sale of the lots with Steve Gardener. Subsequently, Gardener assigned his interest in the contract to Premier R.E., Inc., which submitted proposed building plans to the developer. SI Securities further alleged that the developer rejected the plans and advised that no house plans would ever be approved. The amended complaint sets forth specific covenants that SI Securities contends give the developer too much discretion to deny the use of the lots for constructing residences. Count I of the amended complaint alleges that the developer prevented the sale from going through, which precludes SI Securities from obtaining merchantable title in violation of the policy underlying tax deeds set forth in section 22—55 of the Code (35 ILCS 200/22—55 (West 2004)). SI Securities also cites the first paragraph of section 22—70 in its amended complaint but does not make an explicit allegation regarding its effect on this case. Count I seeks an order declaring that the developer has no authority under the covenants specified therein to prevent SI Securities or any successor purchaser or assignee from building on the lots. Count II seeks an order declaring the proposed plat plan to be acceptable and awarding damages for the lost sale.

The developer filed an answer, a motion to dismiss, and a counterclaim. In its counterclaim, the developer alleges that SI Securities' tax deed did not extinguish the covenants in this case, and it seeks to enforce certain covenants which authorize it to purchase the lots from SI Securities. The developer requests a mandatory injunction requiring SI Securities to accept the price offered by the developer to purchase the lots and to convey the lots by deed to the Bank of Edwardsville trust No. 8180 or, alternatively, to convey the lots by deed with no consideration if SI Securities refuses the price it offers. The judgment appealed from in this case did not dispose of the developer's counterclaim. Thus, it remains pending before the trial court and is not before us on appeal. See 155 Ill. 2d R. 304(a).

In its motion to dismiss SI Securities' amended complaint, the developer again argued, in part, that all covenants running with the land survive the issuance of a tax deed and that there was no basis for the court to void the covenants in this case. The trial court agreed and expressly found that the covenants had not been extinguished by the tax deed pursuant to section 22—7 of the Code. The trial court also dismissed count II of the complaint without prejudice and gave SI Securities 30 days to file an amended complaint. SI Securities appeals the trial court's judgment dismissing count I of its amended complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2004)).

A motion to dismiss filed pursuant to section 2—615 of the Code of Civil Procedure, which attacks only the legal sufficiency of a complaint, admits all well-pleaded facts but does not admit unsupported legal or factual conclusions. *Benge v. State Farm Mutual Automobile Insurance Co.*, 297 Ill. App. 3d 1062, 1066, 697 N.E.2d 914, 917 (1998). A complaint should be dismissed pursuant to section 2—615 only if no set of facts could be proven that would entitle the plaintiff to the relief he seeks. *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 386, 618 N.E.2d 459, 463 (1993). We apply the *de novo* standard of review to the trial court's interpretation of a statute. *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 569, 745 N.E.2d 687, 689 (2001).

SI Securities advances two arguments on appeal. First, SI Securities argues that section 22—70 protects only utility and public service use covenants from extinguishment and that since the particular covenants listed in its amended complaint are not utility or public service use covenants, they were extinguished when the tax deed issued. SI Securities argues that this interpretation promotes the policy in the Code that tax deeds convey merchantable title. Second, SI Securities argues alternatively that the statute expressly provides that

it does not apply to this case because the developer lost title to the lots for its failure to pay "taxes." We disagree with SI Securities' interpretation of the statute, and we find that it waived its alternative argument.

Our primary objective in construing a statute is to give effect to the intent of the legislature, "presuming the legislature did not intend to create absurd, inconvenient[,] or unjust results." *In re Madison H.*, 215 Ill. 2d 364, 372, 830 N.E.2d 498, 503-04 (2005). We must first consider the plain language of the statute because it is considered the most reliable indicator of legislative intent. *In re Madison H.*, 215 Ill. 2d at 372, 830 N.E.2d at 504. When the language is clear and unambiguous, we should give it effect without resorting to other aids for construction. *Grams*, 319 Ill. App. 3d at 570, 745 N.E.2d at 690.

■ We turn now to ascertain and give effect to the legislative intent underlying section 22—70 of the Code. Section 22—70 states as follows:

> "§ 22—70. Easements and covenants running with the land. A tax deed issued with respect to any property sold under this Code shall not extinguish or affect any conservation right, easement, covenant running with the land[,] or right-of-way for water, sewer, electricity, gas, telephone[,] or other public service use which was created[ ] on or over that real property before the time that property was sold under this Code and which is evidenced either by a recorded instrument or by wires, poles, pipes, equipment[,] or other public service facilities. When the property described in a tax deed issued under this Code is a dominant or a servient tenement with respect to any private easement or easements, created in good faith expressly or by operation of law for the benefit of a dominant tenement or tenements, with respect to the easement or easements the tax deed shall have the same effect as a deed of conveyance made by the owner of the property to the tax deed grantee, just prior to the issuance of the deed.
>
> This Section does not apply to tax deeds issued because the owner of any easement, covenant running with the land[,] or right-of-way has failed to pay taxes or special assessments assessed for that easement, covenant running with the land[,] or right-of-way." 35 ILCS 200/22—70 (West 2004).

■ We find that the plain language of the first paragraph of section 22—70 provides that tax deeds shall not extinguish covenants running with the land, regardless of their type. We do not agree with SI Securities' view that the phrase "water, sewer, electricity, gas, telephone[,] or other public service use" modifies the phrase "covenant running with the land." The statute clearly says that a tax deed shall not extinguish or affect *any* covenant running with the land. The

phrase "water, sewer, electricity, gas, telephone[,] or other public service use" is set apart from the other property rights and modifies only the term "right-of-way," which follows the word "or," as opposed to "and." The title of section 22—70, "Easements and covenants running with the land," does not impart a restrictive application of the statute. Additionally, a covenant or a right-of-way can be a type of an easement, and a conservation right can be an easement or a covenant. See Black's Law Dictionary 1326 (6th ed. 1990); G. Covington, *Conservation Easements: A Win/Win for Preservationists and Real Estate Owners*, 84 Ill. B.J. 628 (1996); 20 Am. Jur. 2d *Covenants, Conditions, & Restrictions* § 150 (2005). We find that the redundant language indicates the legislature's intent to broaden the range of property rights that survive the issuance of a tax deed. Focusing solely on the language of the statute, we agree with the developer that there is no rational basis to limit the scope of this statute (which provides for the survival of rather than the extinguishment of property rights) as applying only to utility-related real estate interests. The following considerations provide additional support for our view.

First, our interpretation of the statute does not violate the policy embodied by the Code that tax deeds convey merchantable title. 35 ILCS 200/22—55 (West 2004). The Code does not define "merchantable title." Black's Law Dictionary, however, defines a "merchantable title" as "[a] good and marketable title in fee simple, free from litigation, palpable defects, and grave doubts; a title which will enable the owner not only to hold it in peace but to sell it to a person of reasonable prudence." Black's Law Dictionary 987 (6th ed. 1990). Contrary to SI Securities' view, covenants are typically designed to enhance the value and marketability of property, not to impair its transferability. 20 Am. Jur. 2d *Covenants, Conditions, & Restrictions* § 150 (2005). Our view is that the covenants, when read as a whole, seek to protect each owner's property value by ensuring that the residences constructed in the Stonebridge subdivision complement one another and that certain aesthetic standards are continually sustained. We believe it likely that a person of "reasonable prudence" buying a lot in a subdivision like Stonebridge would anticipate and appreciate the existence of these types of covenants. We fail to see how the covenants, in and of themselves, render SI Securities' title less merchantable.

Second, were we to adopt SI Securities' interpretation of the statute, then all recorded easements and covenants that did not involve water, sewer, electricity, gas, telephone, or other public service uses would be susceptible to extinguishment by the issuance of a tax deed. This would lead to absurd and chaotic results. Homeowners would not be able to rely on recorded easements and covenants to protect the

value of their investment, and their ability and right to use and enjoy their property as bargained for would be severely compromised. Furthermore, if all covenants were extinguished by a tax deed, then any property owner seeking to avoid restrictions could do so by allowing his property to be sold at a tax sale, purchased by an intermediary, and then conveyed back to the previous owner after the expiration of the redemption period. The interpretation advanced by SI Securities would have a potentially adverse effect on the adjacent owners' ability to transfer their property and thus their property values, a result we are certain the legislature did not intend by enacting section 22—70.

Third, the law guarantees SI Securities a merchantable title, but a merchantable title does not mean that SI Securities should obtain the title to more of an interest than that which the prior owner of the property held. It is well-settled that covenants running with the land inhere in the land and bind subsequent purchasers. Accordingly, we find that a tax purchaser should obtain no greater title than a prior owner, with one previously recognized exception not at issue in this case, *i.e.*, a claim of adverse possession. See *Killion v. Meeks*, 333 Ill. App. 3d 1188, 777 N.E.2d 1007 (2002); *Crawford v. Love*, 243 Ill. App. 3d 977, 614 N.E.2d 50 (1993). We do not equate the covenants in this case, which are intended to preserve the value and enhance the merchantability of the property, with a claim of ownership by adverse possession. As a result, we hold that by operation of law, the covenants were carried forward in the chain of title when SI Securities obtained a tax deed to lots 22 and 27. This is particularly true in light of the fact that the covenants had been recorded before the tax deed issued, which provided SI Securities full notice of their existence, nature, and scope. See *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for the Nonpayment of General Taxes and/or Special Assessments for the Year 1990 & Prior Years*, 285 Ill. App. 3d 518, 674 N.E.2d 123 (1996).

Our decision is further aided by the absence of any binding precedent supporting SI Securities' argument. The only legal authority cited by SI Securities is an order in a bankruptcy case issued by the United States Bankruptcy Court for the Northern District of Illinois, In re Unitrust Corp., 86 B 5280 (Bankr. N.D. Ill. March 27, 1987). In that bankruptcy proceeding, the debtor, Unitrust Corp., had obtained tax deeds on six residential lots in the Lake Holiday subdivision in La Salle County. The lots were bound by recorded covenants subjecting owners to an annual charge for repairs and maintenance. The covenants provided that in the event of a nonpayment, the charges would become liens on the property. Unitrust Corp. did not pay the charges, and the homeowners' association filed a claim with the court

for money owed under the covenants. After a hearing, the bankruptcy court interpreted the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 747b (now see 35 ILCS 200/22—70 (West 2004))) and concluded that the law expressly protected only utility easements, utility covenants, and utility right-of-ways, but not other property rights. The court reasoned that limiting the protection afforded by the statute to utility easements and utility covenants, as opposed to all easements and covenants, advances the legislative purposes of encouraging buyers at tax sales and conveying merchantable title. In re Unitrust Corp., order at 6.

We disagree with this interpretation for the reasons we already discussed. Notwithstanding, the bankruptcy court's order in In re Unitrust Corp., 86 B 5280 (Bankr. N.D. Ill. March 27, 1987), does not control our decision in this case because it is not binding precedent. Illinois courts are generally not bound by federal court decisions construing Illinois statutes that do not involve federal questions. *Ray Schools-Chicago, Inc. v. Cummins*, 12 Ill. 2d 376, 381, 146 N.E.2d 42, 45 (1957); *People v. Crawford Distributing Co.*, 53 Ill. 2d 332, 338-39, 291 N.E.2d 648, 652 (1972). In fact, this maxim was indirectly referenced by the United States District Court when it denied the homeowners' association's appeal; the district court declined to pass on the bankruptcy court's interpretation of section 22—70, finding that any such resolution "would be advisory only," a fact SI Securities curiously omits from its brief. *In re Unitrust Corp.*, 84 B.R. 517, 519 (Bankr. N.D. Ill. 1988). Thus, we find the bankruptcy court's order in In re Unitrust Corp., 86 B 5280 (Bankr. N.D. Ill. March 27, 1987), to be neither binding authority nor persuasive authority in this case.

Our decision in this case does find some support in existing precedent and other legal work. The court in *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for the Nonpayment of General Taxes and/or Special Assessments for the Year 1990 & Prior Years*, 285 Ill. App. 3d 518, 519, 674 N.E.2d 123, 124 (1996), stated in *dicta*, "[T]he Code explicitly states that the issuance of a tax deed does *not* extinguish existing easements (35 ILCS 200/22—70 (West 1994))." (Emphasis in original.) See also G. Covington, *Conservation Easements: A Win/Win for Preservationists and Real Estate Owners*, 84 Ill. B.J. 628, 633 (1996) (interpreting section 22—70 as protecting all recorded easements and covenants running with the land).

For all these reasons, we find that pursuant to section 22—70 of the Code, the issuance of the tax deed to SI Securities on lots 22 and 27 did not extinguish the recorded covenants running with the land. Accordingly, we affirm the trial court's judgment dismissing count I of SI Securities' amended complaint.

■ SI Securities next argues that the second paragraph of section 22—70 expressly provides that the statute does not apply to this case because the developer lost title to the lots for its failure to pay "taxes." The developer disagrees with this interpretation of the language but also contends that SI Securities waived this argument because it never raised it in its defense to the developer's motion to dismiss in the trial court.

The record reflects that SI Securities is attempting to introduce a new theory to support its cause of action for the first time on appeal. SI Securities sets forth the first paragraph of section 22—70 in its amended complaint but not the second paragraph relied upon on appeal. Also absent from the amended complaint are any allegations regarding who failed to pay what kind of taxes or special assessments and what effect this has on SI Securities' claim. In its amended complaint, SI Securities merely lays out the covenants it contests, sets forth the first paragraph of section 22—70, and alleges that the court should hold that the developer has no authority under the covenants to deny its reasonable use of the lots. Moreover, SI Securities never raised the issue in the trial court in connection with the developer's motion to dismiss, which forms the basis of the judgment appealed from. The only occasion SI Securities raised the issue was in its motion for a summary judgment filed on October 24, 2003. However, this motion was never ruled on by the trial court, and SI Securities did not refile or renew this motion after it filed its amended complaint. Issues not raised in a complaint and points not argued in the trial court are waived on appeal. *Parks v. Kownacki*, 193 Ill. 2d 164, 180, 737 N.E.2d 287, 296 (2000); *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1048, 738 N.E.2d 592, 597 (2000). We agree that SI Securities waived this argument on appeal, and we decline to address it on its merits.

Accordingly, we affirm the trial court's judgment dismissing count I of SI Securities' amended complaint.

Affirmed.

HOPKINS and McGLYNN, JJ., concur.