2020 IL App (2d) 190923-U
No. 2-19-0923
Order filed June 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BUFFALO GROVE VENTURE LLC, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15-CH-763 |
| | ) | |
| 400 McHENRY ROAD, LLC, | ) | Honorable |
| | ) | Daniel L. Jasica, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Birkett and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court properly granted summary judgment in favor of the plaintiff where the covenants concerning an easement ran with the land and bound all subsequent owners.

¶ 2    Defendant, 400 McHenry Road, LLC, appeals an order of the circuit court of Lake County granting summary judgment in favor of plaintiff, Buffalo Grove Venture LLC. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                              A. The Controversy

¶ 5     The parties own adjacent commercial properties in the Village of Buffalo Grove. Defendant's parcel is landlocked except for a driveway easement, called the Entrance Magazine, which crosses plaintiff's property to Route 83. From January 2007, when defendant acquired its property, until 2012, defendant paid a yearly fee to plaintiff for the use of the Entrance Magazine. Then, in 2012, defendant stopped paying the fee.

¶ 6                 B. The 1991 Covenants, Conditions, and Restrictions Agreement

¶ 7     Plaintiff's property is part of what was once a larger tract owned by Buffalo Grove Joint Venture (Joint Venture).[1] The Joint Venture, together with Buffalo Grove Town Center Partnership (Partnership), developed a shopping mall on properties including what is now plaintiff's property. Michael Reese Health Plan, Inc. (Michael Reese) owned what is now defendant's parcel. Michael Reese purchased its parcel from the Partnership for the purpose of developing it. Because the Joint Venture and the Partnership were developing the mall, they desired to control Michael Reese's development of its property. To that end, on February 19, 1991, the Joint Venture, the Partnership, and Michael Reese entered into a Covenants, Conditions, and Restrictions Agreement (CCR) affecting Michael Reese's parcel. That agreement provided, in pertinent part, as follows.

¶ 8                 1. Maintenance of the Entrance Magazine

¶ 9     The Joint Venture granted Michael Reese and its "invitees, successors, and assigns" a nonexclusive permanent access easement "over and across" the Entrance Magazine.[2] Paragraph 4

---

[1] There is no corporate relationship between plaintiff and Buffalo Grove Joint Venture.

[2] A 1988 plat of subdivision shows the Entrance Magazine. Defendant's deed notes that the CCR granted an easement in favor of Michael Reese's parcel.

of the CCR required Michael Reese to pay the Joint Venture $1800 annually for the use of the Entrance Magazine, commencing on the date that Michael Reese completed construction. That fee was to be increased 5% every year thereafter. In consideration, the Joint Venture was required to maintain the Entrance Magazine in a well-lighted, clean, and safe condition, reasonably free of debris, ice, snow, and other hazards. If the Joint Venture failed to so maintain the Entrance Magazine, Michael Reese could undertake the repairs itself upon 30 days' written notice to the Joint Venture.

¶ 10                              2. Covenants to Run with the Land

¶ 11    Paragraph 11 of the CCR was titled "Covenants To Run With Land." It provided that "[e]ach and all of the covenants, restrictions, conditions, and provisions contained in this [CCR] *** will constitute covenants running with the land." This paragraph further provided that the covenants would bind "every owner" of a portion of the Michael Reese and the Joint Venture properties and would inure to the benefit of the parties and their respective "successors and assigns."

¶ 12    Paragraph 11 then *specifically* addressed the Entrance Magazine. It provided that the covenants, restrictions, conditions and provisions contained in Paragraph 4 of the CCR "will constitute covenants running with the land," will bind "every owner" of a portion of the Michael Reese and the Joint Venture properties, and will inure to the benefit of the parties and their respective "successors and assigns."

¶ 13                                    3. Remedies

¶ 14    Paragraph 16 of the CCR was titled "Remedies." It provided that, if Michael Reese breached any of the covenants, the "Developer" could sue in law or equity, including foreclosing

- 3 -

a lien against the Michael Reese parcel. "Developer" was designated in the CCR as the Partnership and the Joint Venture.

¶ 15                    C. Procedural History of the Present Litigation

¶ 16                                1. Pleadings

¶ 17                            *a. Plaintiff's Complaint*

¶ 18    On March 4, 2015, plaintiff recorded a lien against defendant's property for defendant's unpaid fees for the use of the Entrance Magazine.[3] Then, on April 20, 2015, plaintiff filed suit to foreclose the lien and for breach of contract. On September 1, 2016, plaintiff filed its four-count second amended complaint. Count I alleged breach of contract, count II sought to foreclose the lien, and count III alleged unjust enrichment as an alternative to count I. Count IV concerned a covenant of the CCR that is not pertinent to this appeal.

¶ 19            *b. Defendant's Answer to the Second Amended Complaint*

¶ 20    Defendant answered the second amended complaint, filed affirmative defenses, and filed a counterclaim. In its answer, defendant admitted that the CCR required the Joint Venture's successors, *i.e.* plaintiff, to maintain the Entrance Magazine, but it denied that it had any obligation under the CCR to pay the use fee. Defendant also admitted that the covenant in the CCR requiring the Joint Venture to maintain the Entrance Magazine runs with the land.

¶ 21                *c. Defendant's Amended Affirmative Defenses*

_____

[3] The claim for lien also included unpaid fees for use of something called the Ring Road. Pursuant to Paragraph 4 of the CCR, Michael Reese owed fees to the Partnership for the use of the Ring Road. On April 7, 2017, plaintiff filed an amended claim for lien omitting a claim for the Ring Road. The Ring Road is not part of this appeal.

¶ 22    For its amended affirmative defenses, defendant claimed that plaintiff lacked standing to assert any rights under the CCR because (1) it was not the developer, as defined in the CCR, and (2) the Entrance Magazine consists of land dedicated to public use. Defendant also alleged that plaintiff was guilty of unclean hands in that plaintiff wrongly collected fees for defendant's use of the Entrance Magazine and made false statements in its claims for lien. The court dismissed the unclean-hands affirmative defense.

¶ 23               *d. Defendant's Second Amended Counterclaim*

¶ 24    In its seven-count second amended counterclaim (counterclaim), defendant generally alleged the following. The easement across the Entrance Magazine was created by a recorded plat of subdivision in 1988, not the CCR. Michael Reese was obligated to pay the use fee for the Entrance Magazine solely during the development of the Michael Reese, Partnership, and Joint Venture properties. The parties to the CCR no longer exist, and the CCR terminated by operation of law. Therefore, defendant concluded, plaintiff had no right or standing to collect a fee for the use of the Entrance Magazine, or to pursue any remedies for defendant's failure to pay the fee.

¶ 25    Count I of the counterclaim alleged slander of title in recording the lien against defendant's property. Count II alleged slander of title in recording an amended lien against defendant's property. Count III stated a cause of action to quiet title. Count IV alleged fraud in connection with plaintiff's collection of the fee for defendant's use of the Entrance Magazine. Count V alleged that plaintiff was unjustly enriched. Count VI asked for a declaration that plaintiff's interpretation of the CCR was "absurd, unconscionable, and incorrect." Count VII prayed for a declaration that plaintiff has no standing to enforce the CCR.

¶ 26               2. The Parties' Cross-Motions for Summary Judgment

¶ 27               *a. Defendant's Motion for Partial Summary Judgment*

¶ 28    On October 1, 2018, defendant filed a motion for partial summary judgment as to count I (breach of contract) of plaintiff's second amended complaint. Defendant first argued that plaintiff lacked standing to enforce the CCR because that authority could be exercised only by the "Developer," as defined in the CCR. According to defendant, the developer was the Joint Venture and the Partnership acting jointly.

¶ 29    Next, defendant argued that plaintiff was not a "successor in interest" to the Joint Venture, but that it was merely a subsequent owner of part of the Joint Venture property. As such, defendant argued, plaintiff was not a "successor or assign" within the meaning of the CCR. Lastly, defendant argued that the declaration in Paragraph 4 of the CCR that the Entrance Magazine covenants ran with the land conflicted with the parties' true intention that it bind only Michael Reese.

¶ 30                    *b. Plaintiff's Motion for Summary Judgment*

¶ 31    On October 1, 2018, plaintiff filed its cross-motion for summary judgment as to its breach of contract and lien foreclosure claims and the entirety of defendant's counterclaim. First, plaintiff argued that, as the successor in title to the Joint Venture, it was entitled to enforce the CCR against defendant, which was the successor in title to Michael Reese. Plaintiff asserted that, pursuant to Paragraph 11 of the CCR, the covenants relating to the Entrance Magazine ran with the land and bound all subsequent purchasers. Next, plaintiff contended that defendant waived any argument that plaintiff failed to maintain the Entrance Magazine, both in its answer to the second amended complaint and by failing to file a 30-day notice in accordance with the CCR. In any event, plaintiff argued, its performance was irrelevant to defendant's obligation to pay the annual fee for using the Entrance Magazine. Finally, plaintiff asserted that it was damaged in the amount of $40,829, which represented the unpaid use fees.

¶ 32                    3. The Trial Court's Grant of Summary Judgment to Plaintiff

¶ 33    On April 11, 2019, the court issued its written ruling on the cross-motions for summary judgment. The court found that plaintiff was the successor in title to the Joint Venture and that defendant's own verified pleadings and statement of facts in support of its motion for partial summary judgment admitted such.

¶ 34    Next, the court construed the CCR. The court found that the CCR "created or reaffirmed" a perpetual access easement over what is now plaintiff's parcel for the benefit of what is now defendant's parcel. The court found that this easement runs with the land, survived the development of the properties, and is binding on all successors in title to the Joint Venture and Michael Reese properties.

¶ 35    With respect to defendant's argument that the "Developer" could be only the Joint Venture and the Partnership acting jointly, the court found that such reference in the CCR was for convenience. The court found that plaintiff, as the successor in title to the Joint Venture, could pursue its remedies individually.

¶ 36    Next, the court found that the obligation of the Michael Reese parcel to pay the use fee for the Entrance Magazine was a covenant that ran with the land and bound defendant.

¶ 37    Lastly, the court granted judgment in plaintiff's favor on defendant's counterclaim and entered judgment in plaintiff's favor in the amount of $40,829.

¶ 38                                    4. Postjudgment Motions

¶ 39    Plaintiff filed a petition for attorney fees pursuant to a fee shifting provision in the CCR. Defendant filed a timely motion for reconsideration. On August 26, 2019, the court granted the motion for reconsideration in part by reducing the judgment to $39,906.27. The court denied the remainder of the motion to reconsider. On September 25, 2019, the court entered a written finding

pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), and defendant filed a timely notice of appeal.

¶ 40                                      II. ANALYSIS

¶ 41     Defendant contends that the court improperly granted plaintiff's motion for summary judgment. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Smith v. Bhattacharya*, 2014 IL App (2d) 130891, ¶ 12. Summary judgment is a drastic measure, which should be granted only when the moving party's right to judgment is clear and free from doubt. *Smith*, 2014 IL App (2d) 130891, ¶ 12. We review the grant of summary judgment *de novo*. *Smith*, 2014 IL App (2d) 130891, ¶ 12.

¶ 42     At issue is the interpretation of the CCR. The primary purpose of contract interpretation is to give effect to the intent of the parties. *Salce v. Saracco*, 409 Ill. App. 3d 977, 981 (2011). To determine that intent, the court considers the whole document, rather than focus on isolated portions thereof. *Salce*, 409 Ill. App. 3d at 981. If contract language is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself and given its plain and ordinary meaning. *Storino, Ramello, & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18.

¶ 43     Preliminarily, defendant asks us to strike plaintiff's statement of facts as argumentative. Defendant asserts that plaintiff improperly stated conclusions of law as "facts." Illinois Supreme Court Rule 341(i) (eff. May 25, 2018), provides, *inter alia*, that an appellee's brief need not include a statement of facts except to the extent that the appellant's presentation is deemed unsatisfactory. *Koplin v. Hinsdale Hospital*, 207 Ill. App. 3d 219, 223 (1990). However, any party's statement of

facts must be stated accurately and fairly without argument or comment. *Koplin*, 207 Ill. App. 3d at 223. We decline to strike plaintiff's statement of facts. We will, instead, ignore any portions that violate Rule 341. See *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 95 (appellate court will not strike a statement of facts where the violations do not hinder review but will ignore the offending portions).

¶ 44    We turn now to the parties' contentions. Defendant first argues that the CCR does not apply, because (1) the CCR applied only to the original parties to that agreement and their "successors and assigns," (2) plaintiff is not a "successor or assign" of the Joint Venture, and (3) the covenants in the CCR ran with the land only insofar as they benefited the original parties and their successors and assigns. Defendant's first two points are grounded on the faulty premise that the trial court found plaintiff to be a "successor in interest" to the Joint Venture. It did not. The court termed plaintiff a "successor in *title*" to the Joint Venture, meaning, as the record shows and defendant admitted, that plaintiff is a subsequent owner of part of the tract once owned by the Joint Venture. Specifically, plaintiff's property includes the Entrance Magazine. Consequently, defendant's lengthy discussion of, and citation of cases pertaining to, successors in interest is misplaced. The court found in plaintiff's favor on the basis that the covenants run with the land and bind all subsequent owners, and this is the proper inquiry.

¶ 45                    A. Whether the Covenants Run with the Land

¶ 46    Covenants must be interpreted to give effect to the actual intent of the parties at the time the covenant was made. *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (1983). The intent of the parties can best be determined from the express contractual provisions. *Richmond*, 99 Ill. 2d at 188. Defendant asserts that the CCR was a construction agreement in which the parties intended to bind only themselves and their "successors and assigns" until the completion of the

development of the Michael Reese parcel. Once that was accomplished, defendant argues, the CCR and all its covenants ceased to exist. Of course, this interpretation leaves defendant landlocked. Consequently, defendant argues that a 1988 plat of subdivision, apart from the CCR, granted the public permanent access over the Entrance Magazine.

¶ 47    For a covenant to run with the land, three conditions must be met: (1) the parties must have intended the covenant to run with the land, (2) the covenant must touch and concern the land, and (3) there must be privity of estate between the party claiming the benefit of the covenant and the party resting under the burden of the covenant. *Nassau Terrace Condominium Ass'n., Inc. v. Silverstein*, 182 Ill. App. 3d 221, 224 (1989). Covenants that run with the land inhere in the land and bind subsequent purchasers indefinitely. *Board of Managers of Hidden Lake Townhome Owners Ass'n. v. Green Trails Improve Ass'n.*, 404 Ill. App. 3d 184, 191 (2010); *SI Securities v. Bank of Edwardsville*, 362 Ill. App. 3d 925, 931 (2005). Any deed that conveys the land conveys the covenants that run with the land. *Brady v. Spurck*, 27 Ill. 478, 482 (1861).

¶ 48    We first examine the CCR to ascertain the intent of the parties. In an unnumbered paragraph, the Joint Venture conveyed a "permanent, non-exclusive access easement" in favor of the Michael Reese property over the Joint Venture property (Entrance Magazine) to allow access to Route 83. This document noted that the easement was designated on the plat of subdivision that was recorded in 1988.

¶ 49    Paragraph 4 of the CCR pertained to the maintenance of the Entrance Magazine and provided that the Michael Reese property would pay to the Joint Venture $1800 per year commencing "on the date [Michael Reese] completes construction." Thereafter, the fee would increase 5% "upon each anniversary of the closing date."

¶ 50    Paragraph 11 provided that all of the covenants, restrictions, and conditions in the CCR (1) were made for the benefit of the Michael Reese and Joint Venture parcels and "each and every portion thereof" and "will constitute covenants running with the land," (2) "will bind every owner" of the Michael Reese and Joint Venture parcels, and (3) "will inure to the benefit of the parties and their respective successors and assigns."

¶ 51    Paragraph 11 then separately addressed the covenants as they related to the Partnership: "The covenants, restrictions, conditions, and provisions contained in Paragraph 4 (Maintenance of Ring Road and Entrance Magazine) *** (1) are made" for the "direct and mutual benefit" of the Michael Reese and the Partnership parcels, (2) constitute covenants running with the land, and (3) inure to the benefit of the parties and their respective successors and assigns. Paragraph 11 then provided that all other covenants contained in the CCR were personal to the *Partnership*.

¶ 52    To summarize: the plain language of the CCR provided that, as to the Joint Venture, all of the covenants and restrictions contained therein ran with the land, but, as to the Partnership, only those covenants contained in Paragraph 4 ran with the land.

¶ 53    We determine that, as to the Entrance Magazine, the CCR meets the three conditions for creating covenants that run with the land. First, the parties intended the covenants to run with the land. They clearly expressed that intent in Paragraph 11, where they provided that the covenants would run with the land and bind all subsequent owners of any portion of the Joint Venture and Michael Reese properties. The parties provided that the covenants would bind both subsequent owners and the parties' successors and assigns. Thus, defendant's conclusion that the CCR bound only successors and assigns is erroneous.

¶ 54    The parties also clearly intended that the covenants pertaining to the Entrance Magazine would survive Michael Reese's development of its property. In the preamble to the CCR, the

parties contemplated that Michael Reese would "convey, lease, or otherwise transfer (subject to terms and conditions hereinafter set forth) all or certain of the Parcel to other persons or entities." The CCR provided that the $1800 fee for the use of the Magazine Entrance did not commence until that development was completed; thereafter, the 5% increase was to be assessed on each anniversary of the closing date.

¶ 55    That the covenants pertaining to the Entrance Magazine survived Michael Reese's development is in keeping with the general proposition that covenants creating easements will run with the land. See *Parrish v. City of Carbondale*, 61 Ill. App. 3d 500, 504 (1978) (generally, covenants creating easements will run with the land and bind subsequent owners). Further, the 1988 plat of subdivision does not negate the CCR. Exhibit A to defendant's deed recites that the CCR granted the easement.

¶ 56    If defendant's point is that the plat showed that access to the Entrance Magazine was nonexclusive, that was clear in the Joint Venture's grant to Michael Reese of a permanent "non-exclusive access easement." Nevertheless, Michael Reese agreed to pay the use fee. Defendant does not argue that this provision was substantively unconscionable, that is, that it was one-sided or overly harsh. See *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1196 (2000) (unconscionability relates to situations where a contract clause is allegedly one-sided or overly harsh). Indeed, at page 35 of its opening brief, defendant declares: "400 McHenry is not suggesting that the 1991 [CCR] was unconscionable." At page 10 of defendant's reply brief, it reiterates that the "[t]he 1991 [CCR] is not unconscionable."[4]

---

[4] The record shows that the landscape changed in the years after the CCR agreement was signed. Considerable development took place surrounding the Michael Reese parcel, including the

¶ 57    Second, the covenants touched and concerned the land. The test whether a covenant runs with the land or is merely personal is whether it concerns the thing granted and the occupation and enjoyment of it. *Parrish*, 61 Ill. App. 3d at 504. Here, Exhibit B to defendant's deed notes that "no direct access" to Route 83 is permitted. Thus, the only access from defendant's parcel to Route 83 is over the Entrance Magazine on plaintiff's property. Clearly, the covenants pertaining to the maintenance of the Entrance Magazine concern the easement and enjoyment of it granted by the CCR.

¶ 58    Third, defendant does not dispute that there is privity of estate. Defendant's property was part of the "Mall Property" that was conveyed to Michael Reese by the Partnership.

¶ 59    Indeed, defendant agrees that the covenants run with the land, but it argues that the parties to the CCR limited those covenants to bind only their successors and assigns. This is erroneous as a matter of law. It is "well settled" that covenants that run with the land inhere in the land and bind subsequent purchasers. *SI Securities*, 362 Ill. App. 3d at 931.

> "If the owner of a land enters into a covenant concerning the land—concerning its use—subjecting it to easements or personal servitudes and the like, and the land is afterwards conveyed or sold to one who has actual or constructive notice of the covenant, the grantee or purchaser will take the premises bound by the covenant." *Willoughby v. Lawrence*, 116 Ill. 11, 22 (1886).

¶ 60    Defendant seemingly argues that parties cannot contractually provide that covenants running with the land will bind subsequent purchasers because perpetual contracts are prohibited.

---

addition of a fast food restaurant, a supermarket, and a condominium, all of which were served by the Entrance Magazine with no charge.

Defendant cites *Jespersen v. Minnesota Mining & Manufacturing Co.*, 183 Ill. 2d 290 (1998), and *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, neither of which supports defendant's proposition. Rather, both cases involved sales distribution contracts of indefinite duration. In *Jespersen*, our supreme court held that, where parties fail to agree on a contract's duration, the contract is terminable at will. *Jespersen*, 183 Ill. 2d at 295. In *Rico*, the plaintiff sought a declaration that a sales representative agreement was terminable at will where the agreement stated that it was terminable only upon the written agreement of both parties. *Rico*, 2014 IL App (1st) 131522, ¶ 1.

¶ 61 Both of those cases are far, far afield from the present case. Defendant cites no case that holds that covenants running with the land, which also inure to the benefit of "successors and assigns," are temporally limited to those entities. Nor are we persuaded by defendant's argument that plaintiff is not bound by the CCR because plaintiff does not own the whole Joint Venture tract but only a portion of it. Significantly, plaintiff owns the Entrance Magazine.

¶ 62 B. Whether Plaintiff Can Enforce the CCR

¶ 63 Defendant contends that only the "Developer" had the right to enforce the CCR. In the first paragraph of the CCR, the Joint Venture and the Partnership were individually identified as parties to the agreement and then were identified "collectively" as the "Developer." Throughout the document, when speaking of them individually, they were referred to as the "Joint Venture" or "the Partnership." Specifically, Paragraph 4 of the CCR provided that Michael Reese owed a fee to the Joint Venture for the use of the Entrance Magazine, and that the Joint Venture had the duty to maintain the easement. This made sense because the easement was on the Joint Venture's property. However, Paragraph 16 of the CCR provided that the "Developer" "shall have all rights and remedies to enforce [collection or performance under this agreement]." In its ruling, the court

found that wherever the term "Developer" appeared in the CCR, it was appropriate to replace it with "the Partnership and the Joint Venture." In other words, the court found that the term "Developer" was used simply for ease of reference. Therefore, the court concluded that the CCR gave each entity the right to pursue its remedies individually.

¶ 64    Defendant argues that the CCR styled the Joint Venture *and* the Partnership as the "Developer," meaning that both entities had to enforce the agreement. Because the Partnership no longer exists, defendant asserts that plaintiff cannot enforce the agreement. We disagree. Pursuant to Paragraph 4 of the CCR, Michael Reese owed the fee for the use of the Entrance Magazine only to the Joint Venture. It follows that the Joint Venture alone would have standing to collect the debt. Michael Reese's nonpayment would not injure the Partnership, because the debt was not owed to the Partnership. Thus, the Partnership could not assert the Joint Venture's legal rights. See *In re Marriage of Hopwood*, 378 Ill. App. 3d 746, 751 (2008) (a plaintiff must assert its own legal rights and interests rather than basing its claim upon the rights of third parties).[5]

¶ 65    Defendant further argues that the CCR ceased to exist upon the completion of the development of the Michael Reese parcel. Thus, defendant argues, plaintiff is not authorized to collect fees for the use of the Entrance Magazine. We have already determined that the covenants pertaining to the Entrance Magazine run with the land and bind all subsequent owners. Consequently, we reject this argument. Further, as noted, the parties provided that the fee for the use of the Entrance Magazine would not commence until Michael Reese completed its

---

[5] Indeed, defendant successfully argued before the trial court that the Joint Venture could not collect the fee due the Partnership for the use of the Ring Road.

development, and that the 5% increase would incur thereafter on each anniversary of the closing date. Clearly, those events were to happen after the completion of Michael Reese's development.

¶ 66                          C. The Trial Court's Interpretation of the CCR

¶ 67    Defendant asserts that the court's interpretation of the CCR leads to an absurd result. Specifically, defendant contends that the 5% annual increase bears no relation to any actual costs for the maintenance of the Entrance Magazine. Had the parties to the CCR intended to provide for future maintenance costs, defendant argues, they would have included a formula for the calculation of such costs. This argument ignores that the 5% increase is such a formula, which was agreed to by the parties. The CCR was signed in 1991. The parties could not have projected exact maintenance costs into the next millennium and beyond.

¶ 68         D. Whether Summary Judgment on Defendant's Counterclaim Was Proper

¶ 69    Defendant argues that the court improperly granted summary judgment as to its counterclaim. The court found that its grant of summary judgment to plaintiff on its second amended complaint dictated that plaintiff be granted summary judgment on count I (slander of title for recording the original lien), count II (slander of title for recording the amended lien), count III (quiet title), count VI (declaration that the CCR was unconscionable), and count VII (declaration that plaintiff has no standing to enforce the CRR) of defendant's counterclaim. As we have already determined those issues in plaintiff's favor, we agree with the trial court's decision.

¶ 70    Defendant additionally argues that the court inappropriately granted summary judgment on count IV (fraud) and count V (unjust enrichment) of the counterclaim.

¶ 71                               1. Count IV—Fraud

¶ 72    Defendant's fraud count was based on its theory that plaintiff had no right to collect a fee for the use of the Entrance Magazine. Defendant alleged that plaintiff, through its property

managers, falsely misrepresented that fee as a "common area maintenance fee" and falsely misrepresented that the CCR gave plaintiff the authority to collect the fee. Defendant further alleged that plaintiff did not collect a fee from any other users of the Entrance Magazine, nor did it maintain the Entrance Magazine. Defendant alleged that it was damaged in the amount of $35,563.94.

¶ 73 The elements of common law fraud are (1) a knowingly false statement of material fact, (2) the party to whom the statement was made had the right to rely on it and did so, (3) the statement was made to induce the other party to act, and (4) reliance by the party to whom the statement was made led to his injury. *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 161 (1986). The trial court found that plaintiff did not justifiably rely on plaintiff's representations, because it was in possession of the CCR and had the means to obtain the knowledge that the charges were not authorized.

¶ 74 Defendant concedes that it determined that the CCR did not apply, but, nevertheless, argues that there is a fact question as to whether it justifiably relied on plaintiff's misrepresentations because plaintiff's invoices were "confusing" and plaintiff refused to provide explanations. If defendant determined that the CCR did not give plaintiff authority to collect a fee for the use of the Entrance Magazine, the confusing nature of the invoices is immaterial. Defendant, according to its own admission, determined that plaintiff was not entitled to any payment, regardless of the state of the invoices. Accordingly, defendant failed to raise a genuine issue of material fact concerning its justifiable reliance, and the trial court properly granted summary judgment on the fraud count.

¶ 75 2. Count V—Unjust Enrichment

¶ 76    Defendant alleged that plaintiff's retention of the fees that it collected for the use of the Entrance Magazine constituted unjust enrichment. Unjust enrichment is an equitable remedy based on a contract implied in law. *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 566 (2004). As an equitable remedy, unjust enrichment is available only when there is no adequate remedy at law. *Nesby*, 346 Ill. App. 3d at 567. The doctrine of unjust enrichment has no application where a specific contract governs the parties' relationship. *Nesby*, 346 Ill. App. 3d at 567.

¶ 77    The trial court found that this cause of action failed because defendant voluntarily made payments under the CCR even though it had determined that the CCR did not apply. The court also found that the CCR governed the parties' relationship and provided a remedy. Defendant argues that it established fraud, which is an exception to the voluntary payment doctrine, and that the CCR does not govern the parties' relationship.

¶ 78    We have already determined that the CCR governs the parties. Therefore, the doctrine of unjust enrichment does not apply. Moreover, pursuant to Paragraph 4 of the CCR, defendant's remedy for plaintiff's alleged failure to maintain the Entrance Magazine was to give plaintiff 30 days' notice and then make the necessary repairs itself. Accordingly, for the above stated reasons, we hold that the trial court properly granted summary judgment in plaintiff's favor.

¶ 79                              III. CONCLUSION

¶ 80    The judgment of the circuit court of Lake County is affirmed.

¶ 81    Affirmed.